(942 P.2d 57)

76,279

STATE OF KANSAS, *Appellee*, v. BRIAN A. SNOW, *Appellant*.

Opinion filed July 11, 1997.

*Randall Hodgkinson*, assistant appellate defender, *Edward G. Collister, Jr.*, special appellate defender, and *Steven R. Zinn*, deputy appellate defender, for the appellant.

*Rick J. Scheufler*, assistant county attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before BRAZIL, C.J., PIERRON, J., and PADDOCK, S.J.

PIERRON, J.: Brian A. Snow appeals his sentence after pleading guilty to one count of aggravated intimidation of a witness, a severity level 6 person felony, in violation of K.S.A. 21-3833. The district court held two hearings concerning Snow's sentence. Snow argues the district court improperly modified his sentence at the second hearing.

Snow pled guilty to aggravated intimidation of a witness. In exchange for the guilty plea, the State dismissed three counts of aggravated indecent liberties with a child. The parties agreed that Snow's criminal history classification was category E. Snow had a sentencing guidelines classification of 6-E with a presumptive sentence of 28 to 32 months' incarceration with 24 months' postrelease supervision.

Prior to sentencing, Snow filed a motion for departure on his physical, emotional, and mental problems. At the first sentencing hearing on September 11, 1995, the district court ruled:

"It is the sentence of this court that Mr. Brian A. Snow be committed to the custody of the Secretary of Corrections of the State of Kansas to serve a term of imprisonment of 30 months as determined by severity level six criminal history level E grid placing. That he have a post supervision duration of 24 months. With regard to the motion for departure, in order to grant a motion for departure, the

court must find that the evidence offered in support of the motion is substantial and compelling. The evidence in this case consists of the medical records provided and admitted into evidence, the testimony of the victim's family, the victim's mother, who is recommending something less than the statutory sentence, and I guess, I'm not sure it constitutes evidence, but the fact that the State does not object to the motion for departure. Mr. Snow has a rather lengthy record, most of it as a juvenile, consisting of operating a vehicle with no insurance, an adult charge; and the balance of the nine convictions being juvenile convictions consisting of burglary of a dwelling; burglary of a dwelling; burglary of a dwelling; burglary of a dwelling; criminal damage to property; criminal damage to property; burglary of a building, not a dwelling; theft and burglary of a building not a dwelling. They range from May of '90 through August of '94, some ten prior convictions in four years. The facts contained in the pre-sentence investigation report, both the official version of the incident and the defendant's version of the incident confirm that the allegation occurred. The facts, however, are somewhat, the facts aren't as bad as the conviction indicates. He was convicted of aggravated intimidation of a victim, but according to the official version, the defendant told the young girl that if she reported this he would not love her again. Which is different than the usual kind of threat that we have to deal with. In *State versus Heath* the Court of Appeals held that a valid reason for departure is the statement of a victim and/or the victim's family. Certainly the statement of the victim here today is supported by the evidence. She appeared in open court and she made her statement for the record. In view of the fact that the State does not oppose the motion for departure, the court finds that the motion for departure should be granted. The court assigns Brian A. Snow to Community Corrections and to Labette Conservation Camp. I believe that that is a statutorily acceptable sentence. In the event that Mr. Snow is not accepted by Labette Conservation Camp, it will be necessary for him to reappear in Court and the court reserves the opportunity to modify this sentence in case that he is not accepted."

Following sentencing, a case report from the Central Kansas Community Corrections program stated that Labette Correctional Conservation Camp (Labette) declined Snow's admission due to his back problems caused by scoliosis and Labette's inability to provide the necessary psychiatric help. The Community Corrections program recommended that the district court impose the presumptive guidelines sentence of incarceration because Snow was not a proper candidate for assignment to community corrections. Community Corrections rejected Snow because: (1) he did not have a residence in Barton County; (2) he did not have an option for residence in any other judicial district; and (3) he was denied acceptance to Labette.

At a second hearing on December 1, 1995, the district court reviewed Snow's sentence in light of the fact that he had been denied acceptance to Labette. The district court again heard testimony from Snow and from Snow's mother. The court felt Snow was between alternatives. The court found Snow wanted to turn his life around. The court indicated there was a good case for Snow not to go to prison, but there was also a good case for a sentence stronger than probation, which the court stated was the reason he had originally been assigned to community corrections.

In sentencing Snow to his original incarceration sentence, the district court stated as follows:

"When the court departed at the sentencing hearing the departure was based upon the alternatives available and the departure was based upon a belief that in addition to the time Mr. Snow has already served, that Mr. Snow would have the benefit of Labette County Conservation Camp, which has proved in the past to be helpful to people of Mr. Snow's age particularly. It was also based on the assumption that after that period of say nine months that he would be in, that he would become a suitable candidate for Community Corrections. Through no fault of his own, Mr. Snow is not acceptable to Labette County, and cannot be admitted there. Community Corrections['] evaluation is that they feel he is not suitable for their program. He might have been if he'd had the opportunity to go to Labette, but he didn't have that opportunity. The conditions upon which the departure [was] made did not come into existence. Therefore, Mr. Snow, I find that the departure should be set aside and that the original sentence imposed by the court should be served."

Following the second hearing, the district court filed a journal entry entitled "JOURNAL ENTRY OF HEARING ON MOTION TO REVOKE OR MODIFY PROBATION." The journal entry states, in part: "[T]here is sufficient evidence and grounds for the court to consider revoking the defendant's probation in that the defendant violated (his) (her) probation as follows: . . . By not being accepted into the Labette Conservation Camp."

Snow argues the trial court acted illegally when it reversed the departure determination and sent him to prison. He contends that when the court indicated it would reconsider the motion for departure if Labette denied him acceptance, it intended to find a substitute for the assignment to community corrections sentence in a different setting. Snow argues the court erred in setting aside

the earlier departure order and imposing a new sentence. He points out he did nothing of his own free will to violate any court order and was rejected from Labette because of a physical deformity.

Snow analogizes his case to those where the appellate courts found that once the sentencing court imposed sentence in open court, the sentence was the judgment announced. Once a sentence is imposed, *i.e.*, announced from the bench, a sentence cannot be increased or made more severe. See *State v. Royse*, 252 Kan. 394, Syl. ¶ 4, 845 P.2d 44 (1993); *State v. Zirkle*, 15 Kan. App. 2d 674, Syl. ¶ 5, 814 P.2d 452 (1991). He argues that once the court sentenced him to an assignment to community corrections, the law permitted changes in custody status, but did not permit setting aside his sentence (for reasons other than lack of jurisdiction) or resentencing him to a harsher sentence.

Snow argues the court could have amended the conditions of his assignment to community corrections or found that he violated the conditions of his assignment and revoked the same. However, Snow argues he did not violate any of the conditions of assignment to community corrections. He contends one of the conditions of his assignment was unattainable and the court could have modified the conditions, but the order of assignment to community corrections still existed.

In *Royse*, 252 Kan. at 395, the court imposed multiple sentences, but failed to address whether they were to run concurrently or consecutively. Pursuant to statute, whenever the record is silent as to the manner in which two or more sentences imposed at the same time shall be served, they shall be served concurrently. See K.S.A. 1994 Supp. 21-4608(1). After realizing its omission, the court ordered the defendant to appear and 7 days later, the court ordered the sentences to run consecutively. The Supreme Court held the defendant's sentences were complete when orally pronounced and could not later be increased. Therefore, pursuant to K.S.A. 1991 Supp. 21-4608(1), the sentences were to run concurrently. 252 Kan. at 397-98.

In *Zirkle*, 15 Kan. App. 2d 674, the district judge sentenced the defendant to a term of 1 to 5 years' imprisonment. After imposing

sentence, the judge inquired as to the jail time the defendant had already served, vacated the sentence, and ordered that the sentence be increased to 2 to 5 years' imprisonment. This court noted *State v. Moses*, 227 Kan. 400, 402-03, 607 P.2d 477 (1980), and found that Zirkle had been sentenced when the judge announced the 1- to 5-year sentence from the bench. The court also ruled that once a sentence is imposed, the district court is powerless to vacate that sentence and impose a harsher sentence. 15 Kan. App. 2d at 677-78.

The relevant portion of K.S.A. 21-4603d concerning authorized dispositions reads as follows:

"(a) Whenever any person has been found guilty of a crime, the court may adjudge any of the following:

. . . .

(5) assign the defendant to a conservation camp for a period not to exceed 180 days as a condition of probation followed by a 180-day period of follow up through adult intensive supervision by a community correctional services program, if the offender successfully completes the conservation camp program."

Unconditional commitment to this sentence would appear to be final and not modifiable analogous to *Royse* and *Zirkle*.

On the other hand, the State argues that *State v. Vickers*, 19 Kan. App. 2d 495, 872 P.2d 314 (1994), controls this case and supports its position that the district court expressly reserved the right to modify Snow's sentence if he was denied acceptance to Labette. Therefore, the State contends the district court continued the sentencing proceedings pending resolution of the Labette issue.

In *Vickers*, the court sentenced the defendant to 1 to 5 years' imprisonment for one conviction and 5 to 20 years' imprisonment for each of three other convictions. Regarding the issue of whether these sentences would run concurrently or consecutively, the court addressed the defendant at sentencing as follows:

" 'Mr. Vickers, I assume that you were informed that recommendations to the Court are just recommendations. They are not binding on the Court. You have a history here of prior felony convictions, um, and I'm not sure it's appropriate to run all of these sentences concurrently. However, I'll go through this file again. I've only had a brief time to review the presentence report. I have had an opportunity to do that, but these are serious and violent offenses. Um, Mr. Vickers,

your statement is that you've stumbled here. It appears to me this is a little more than a stumble, certainly, to the victim. You have several victims here. The theft is a nonviolent crime, but it is a relatively large amount of money that you stole from an employer. I think the citizens of this community have a right to be protected against violent criminals. This certainly is a violent act. I'll address that in writing within a relatively short period of time. I hope you'll be furnished copies of that.' " 19 Kan. App. 2d at 496.

The sentencing court subsequently filed a journal entry running several of the sentences consecutively.

The *Vickers* court distinguished *Royse* in finding the district court had the authority to run the sentences consecutively. The court stated:

"In the sentencing of a criminal defendant on felony convictions where the court pronounced the length of sentence for each conviction in open court, but specifically stated it had yet to determine whether the sentences would run concurrently or consecutively, it is held: The court in effect continued the sentencing hearing pending resolution of the concurrent/consecutive issue, and the court's subsequent completion of the sentencing through the filing of a journal entry indicating some of the sentences would run concurrently and others would run consecutively was without effect." 19 Kan. App. 2d 495, Syl. ¶ 2.

The sentencing transcripts as opposed to the sentencing journal entries control as to events that occurred in this case. See *Moses*, 227 Kan. at 402 (the journalized entry is thus a record of the sentence imposed; but the actual sentencing occurs when the defendant appears in open court and the judge orally states the terms of the sentence). The district court was clear in sentencing Snow to an assignment to community corrections: "The court assigns Brian A. Snow to Community Corrections and to Labette Conservation Camp. I believe that that is a statutorily acceptable sentence." The problem is that in the very next breath, the judge makes the previous statement conditional: "In the event that Mr. Snow is not accepted by Labette Conservation Camp, it will be necessary for him to reappear in Court and the court reserves the opportunity to modify this sentence in case that he is not accepted."

It cannot be disputed that acceptance to Labette was a condition of Snow's assignment to community corrections. It is highly unlikely the court wanted Snow to have an assignment to community corrections without acceptance by Labette. Snow's argument that

the court wanted to come back later in order to substitute an equivalent to Labette is unlikely. Had the district court wanted to do so, it could have expressed its desire to reserve the opportunity to find a substitute for Labette rather than merely indicating it wanted "the opportunity to modify this sentence."

As indicated in the journal entries, the district court appeared to consider Snow's failure to be accepted by Labette as a violation of the conditions of his assignment to community corrections. The fact that Snow did nothing voluntary to violate one of the conditions of his assignment to community corrections is immaterial. The district court has the ability to set the conditions of probation or assignment to community corrections and if those conditions are not met, it provides cause for revocation. See *State v. Dubish*, 236 Kan. 848, Syl. ¶ 2, 696 P.2d 969 (1985) (probation is separate and distinct from sentencing); *State v. Moon*, 15 Kan. App. 2d 4, 9, 801 P.2d 59 (1990), *rev. denied* 248 Kan. 998 (1991) (probation is a procedure whereby a defendant, found guilty of a crime, is released by the court after imposition of sentence, without imprisonment, subject to various conditions).

Probation revocation need not be the result of fault on the part of the probationer if the condition of probation that is not met, as in the instant case, presumes the granting of probation only when a certain placement is available.

The lack of appropriate resources may often be the reason a defendant is incarcerated as opposed to being committed to a less harsh, and perhaps more effective, placement. This situation is unfortunate and in a certain sense, unfair. However, absent constitutional infirmities such an approach is lawful.

We have reviewed the case of *State v. Miller*, 260 Kan. 892, 926 P.2d 652 (1996), involving codefendants Douglas and Miller, and find it distinguishable from the instant case. Both Douglas' and Miller's sentences were imposed without reservation. Unlike Snow's situation, there were no conditions stated by the court as to what would prevent the imposition of the sentence announced. The sentencings of Douglas and Miller were completed. It was the later attempt to modify the completed sentencing hearings which our Supreme Court found lacked jurisdiction.

In the instant case, the presumptive sentence was imposed by the court, which then left open the possibility of assignment to Labette and community corrections if Snow could obtain acceptance to these programs. We find this is in all substantive ways the same as setting out the possibilities and then continuing the matter for sentencing or final disposition. As such, it was proper procedure.

Affirmed.