No. 114,523

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUAN A. MEDINA,
*Appellant*.

SYLLABUS BY THE COURT

1.

A categorical proportionality challenge under the Eighth Amendment to the United States Constitution is a question of law over which an appellate court has unlimited review.

2.

The holding in *State v. Dull*, 302 Kan. 32, 351 P.3d 641 (2015), *cert. denied* 577 U.S. ___, 136 S. Ct. 1364 (2016), that mandatory lifetime postrelease supervision is categorically unconstitutional when imposed on a juvenile convicted of aggravated indecent liberties with a child, applies to all juveniles convicted of a sex offense.

Appeal from Wyandotte District Court; MICHAEL GROSKO, judge. Opinion filed October 14, 2016. Sentence vacated in part and remanded with directions.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Alan T. Fogleman*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

1

Before MALONE, C.J., SCHROEDER, J., and WALKER, S.J.

MALONE, C.J.: Juan Medina appeals his sentence of lifetime postrelease supervision following his conviction of aggravated criminal sodomy committed when he was under the age of 18. Medina argues that the imposition of lifetime postrelease supervision for juveniles convicted of a sex offense is unconstitutional under the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights. Based on controlling Kansas Supreme Court precedent, we agree. Thus, we vacate the lifetime postrelease supervision portion of Medina's sentence for aggravated criminal sodomy and remand to the district court for resentencing.

*Factual and procedural background*

The relevant facts are straightforward and undisputed. Between November 12, 2008, and November 11, 2009, Medina, who was under the age of 18, engaged in sexual intercourse with J.C., his sister, who was 12 and 13 years of age at the time of the incidents. Medina also performed oral sex on J.C. between November 12, 2009, and November 11, 2010, when she was still under the age of 14. J.C. did not report Medina's sexual abuse until 2014. After the sexual abuse involving J.C. came to light, the State charged Medina with one count of rape and one count of aggravated criminal sodomy in 14CR1071. At the time these charges were filed, Medina already was on probation for a 2012 rape conviction in 12CR823, which he committed when he was an adult.

On May 1, 2015, pursuant to a plea agreement, Medina pled no contest to one count of aggravated criminal sodomy in exchange for dismissal of the rape charge. The parties agreed to recommend a downward durational departure sentence of 165 months' imprisonment, and the plea agreement indicated that Medina stipulated to violating his probation in 12CR823. Prior to sentencing, Medina filed a motion for durational

2

departure on the grounds that he accepted responsibility for his actions and spared J.C. the trauma of trial testimony.

The district court held a sentencing hearing on June 12, 2015. The judge began the hearing by revoking Medina's probation in 12CR823 and ordering him to serve his underlying sentence in that case of 165 months' imprisonment followed by lifetime postrelease supervision. Nothing about that order is subject to this appeal. In 14CR1071, the district court granted Medina's motion for durational departure and imposed the agreed sentence of 165 months' imprisonment with lifetime postrelease supervision. The district court ordered the sentences in the two cases to run consecutively. Medina timely filed a notice of appeal in 14CR1071.

On appeal, Medina argues that mandatory lifetime postrelease supervision for crimes committed by juveniles constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights. Specifically, he asserts that the imposition of lifetime postrelease supervision on juveniles convicted of a sex offense is categorically disproportionate. Acknowledging that this issue is being raised for the first time on appeal, Medina argues that his constitutional challenges are purely questions of law that are "determinative of the case."

The State concedes that Medina's Eighth Amendment claim can be heard for the first time on appeal; on the merits, the State argues that lifetime postrelease supervision for Medina's conviction of aggravated criminal sodomy does not violate the Eighth Amendment. The State argues that Medina's § 9 challenge cannot properly be raised due to the necessity of conducting a fact intensive inquiry to resolve it. The State also contends that even if Medina's § 9 challenge involves only questions of law, it still cannot be addressed because he failed to adequately brief it.

3

K.S.A. 2015 Supp. 22-3717(d)(1)(G),(5)(E) requires lifetime postrelease supervision following a conviction of aggravated criminal sodomy. The constitutionality of a sentencing statute is a question of law subject to an appellate court's unlimited review. *State v. Hilt*, 299 Kan. 176, 202, 322 P.3d 367 (2014). More specifically, a categorical proportionality challenge under the Eighth Amendment is a question of law over which an appellate court has unlimited review. *State v. Dull*, 302 Kan. 32, 40, 351 P.3d 641 (2015), *cert. denied* 577 U.S. ___, 136 S. Ct. 1364 (2016). If there is any way for an appellate court to construe a statute as constitutional, it must do so. *State v. Mossman*, 294 Kan. 901, 906-07, 281 P.3d 153 (2012).

*Issue preservation*

To determine whether Medina's claims are preserved, it is necessary to separate his claim under § 9 of the Kansas Constitution Bill of Rights from his claim under the Eighth Amendment. See *State v. Gomez*, 290 Kan. 858, 862, 235 P.3d 1203 (2010). The constitutionality of a sentence under § 9 of the Kansas Constitution Bill of Rights turns on the proportionality test articulated in *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978). *Gomez*, 290 Kan. at 867. Under this test, the court conducts a three-part analysis that includes both legal and factual inquiries. 290 Kan. at 867. "A challenge under § 9 of the Kansas Constitution Bill of Rights generally cannot be raised for the first time on appeal because of the factual inquiries involved." *Dull*, 302 Kan. at 38. Thus, we will not consider Medina's claim under § 9 of the Kansas Constitution Bill of Rights.

Conversely, constitutional challenges under the Eighth Amendment are divided into two categories:  (1) challenges to length-of-term sentences taking into account the circumstances of a particular case; and (2) categorical proportionality challenges where the defendant claims that a particular punishment is disproportionate for an entire class of offenders. *Graham v. Florida*, 560 U.S. 48, 61, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). Medina's Eighth Amendment claim is a categorical proportionality challenge

4

because he argues that the imposition of lifetime postrelease supervision is categorically disproportionate for all juveniles convicted of a sex offense. Because categorical proportionality challenges are not case specific and generally raise questions of law, we will consider Medina's Eighth Amendment claim for the first time on appeal. See *Dull*, 302 Kan. at 39 (addressed categorical proportionality claim for first time on appeal).

*Merits of Medina's Eighth Amendment challenge*

Medina contends that the imposition of lifetime postrelease supervision for juveniles convicted of a sex offense constitutes cruel and unusual punishment under the Eighth Amendment. To support his argument, Medina relies on *Dull*, which held that mandatory lifetime postrelease supervision of juveniles convicted of aggravated indecent liberties with a child constitutes cruel and unusual punishment in violation of the Eighth Amendment. 302 Kan. at 61. Medina argues that this holding should be extended to all sex crimes committed by juveniles.

Medina applies the two-pronged approach set out in *Graham*, where the court first looks at whether there is a national consensus against the sentencing practice at issue and then exercises its own independent judgment to determine whether the punishment in question violates the Constitution. 560 U.S. at 61. First, Medina argues that there is a national consensus against lifetime postrelease supervision for juveniles. Next, he asserts that the reduced culpability of juvenile offenders, the severe nature of lifetime postrelease supervision, and its inappropriateness in furthering legitimate penological goals render it unconstitutional as applied to juvenile offenders. According to Medina, the same rationale behind the court's decision in *Dull* is applicable here, and lifetime postrelease supervision for all juvenile sex offenders is categorically unconstitutional.

In response, the State argues that *Dull* is distinguishable from Medina's case. In regards to the first prong of the *Graham* analysis, the State contends that there is not any

national consensus against lifetime postrelease supervision of juvenile sex offenders. The State also argues that this court should take into account the severity of Medina's sex crime when exercising its own independent judgment; Dull's crime of aggravated indecent liberties with a child was a level 3 offense, which is a less serious offense and is distinguishable from Medina's level 1 person felony for aggravated criminal sodomy. Finally, the State claims that if *Dull* is not distinguishable and it does apply to all juvenile sex offenses, then it was wrongly decided.

Medina's main argument on appeal is that the Kansas Supreme Court's ruling in *Dull* should be extended to all sex crimes committed by juveniles. Therefore, the first issue we should consider is whether the ruling in *Dull* already constitutes a blanket prohibition on lifetime postrelease supervision for juveniles convicted of sex offenses. To answer this question, a thorough examination of *Dull* is necessary.

Dull was convicted in one case of aggravated indecent liberties with a child, and he was convicted in a separate case of burglary and misdemeanor theft. Dull was 17 years old when he committed aggravated indecent liberties, but he was prosecuted as an adult. As a result, he received a statutorily required sentence of lifetime postrelease supervision for that conviction.

On appeal, Dull challenged the constitutionality of his mandatory lifetime postrelease supervision under the Eighth Amendment. The Court of Appeals applied the two-pronged *Graham* analysis and held that mandatory lifetime postrelease supervision for juvenile offenders does not categorically rise to the level of cruel and unusual punishment under the Eighth Amendment. See *Dull*, 302 Kan. at 36. On a petition for review, the Kansas Supreme Court reversed the Court of Appeals and held that mandatory lifetime postrelease supervision is categorically unconstitutional when imposed on a juvenile who committed and was convicted of indecent liberties with a child. 302 Kan. at 61.

6

In reaching this decision, the court applied the two-prong *Graham* analysis. *Dull*, 302 Kan. at 45. The court first asked whether "objective indicia of society's standards" demonstrated a national consensus against the sentencing practice of mandatory lifetime postrelease supervision. 302 Kan. at 45-46. In answering this question, the court noted that 18 states imposed mandatory lifetime postrelease supervision for some convicted sex offenders. 302 Kan. at 50. Kansas, Colorado, Nebraska, and Oklahoma mandated lifetime postrelease supervision of juveniles convicted of offenses comparable to aggravated indecent liberties with a child. 302 Kan. at 50. Arizona allowed for discretionary lifetime postrelease supervision in such circumstances. 302 Kan. at 50. However, Indiana, Montana, and Oregon prohibited mandatory lifetime postrelease supervision for juveniles. 302 Kan. at 50. Based on these findings, the court held that Dull had failed to show that there was a national consensus against imposing lifetime postrelease supervision on juveniles. 302 Kan. at 50.

Noting that the presence or absence of a national consensus is not dispositive, our Supreme Court then turned to the second prong of *Graham*. *Dull*, 302 Kan. at 51. Under this prong, the court is to exercise independent judgment and consider the culpability of juvenile offenders, the severity of mandatory lifetime postrelease supervision, and the legitimate penological goals served by lifetime postrelease supervision. 302 Kan. at 51; see *Mossman*, 294 Kan. at 929.

As to culpability, our Supreme Court reiterated the view of the United States Supreme Court in *Miller*, *Graham*, and *Roper* that juveniles should be treated differently than adult offenders because they are less culpable due to immaturity and they are more likely to be successfully reformed. *Dull*, 302 Kan. at 51. See generally *Miller v. Alabama*, 567 U.S. __, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012); *Graham*, 560 U.S. 48; *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005). Based on these decisions, the court concluded that Dull had a diminished moral culpability for his crime because he committed the offense when he was 17 years old. 302 Kan. at 52.

Next, the court noted that lifetime postrelease supervision, while not as serious as imprisonment, is a severe punishment that "restricts the juvenile's liberty for life without any chance, hope, or legal mechanism of having those restrictions lifted or even reduced." 302 Kan. at 55. In support of this finding, the court noted that the restrictions imposed included: reporting to a parole officer as directed; undergoing polygraph examinations at the request of the parole officer; registering and reporting to the local sheriff as directed; submitting to searches of the offender's residence, automobile, and personal effects; not traveling outside the state without permission; not drinking alcoholic beverages without permission; and not hunting with a firearm. 302 Kan. at 56.

Finally, the court examined whether lifetime postrelease supervision serves legitimate penological goals. 302 Kan. at 56. The court first acknowledged that rehabilitation and incapacitation are the central purposes of the criminal justice system, and these goals are especially important in sex offense cases because of the high rate of recidivism in sex offenders. 302 Kan. at 57. It discussed Kansas cases justifying the imposition of lifetime postrelease supervision on sex offenders due to these penological concerns, but it rejected them as inapplicable to the case at hand because they did not address the unique penological goals of juvenile offenders. 302 Kan. at 57.

Instead, our Supreme Court looked to the penological goals of life without parole sentences articulated in *Graham* and *Miller*. Our Supreme Court held that because juveniles are less culpable than their adult counterparts, the goal of retribution does not justify the imposition of such a severe penalty as lifetime postrelease supervision. *Dull*, 302 Kan. at 57. Similarly, the immaturity of juveniles makes it unlikely that deterrence is a legitimate consideration for juveniles because of their irresponsibility and impetuousness. 302 Kan. at 57-58. The goal of rehabilitation is not met by lifetime postrelease supervision because a lifetime restraint on a juvenile's liberty "requires a determination that the juvenile will forever be a danger to society and 'foreswears altogether the rehabilitative ideal.'" 302 Kan. at 60 (quoting *Graham*, 560 U.S. at 74).

8

Lastly, relying on data from several law review articles, the court found that juvenile sex offenders have lower recidivism rates than adults; thus, lifetime postrelease supervision is not justified by the penological goal of incapacitation to avoid recidivism. 302 Kan. at 60.

Based on all of these findings, the *Dull* court concluded "that mandatory lifetime postrelease supervision is categorically unconstitutional under *Graham* when imposed on a juvenile who committed and was later convicted of aggravated indecent liberties with a child." 302 Kan. at 61. The court vacated the lifetime postrelease supervision portion of Dull's sentence and remanded to the district court for resentencing. 302 Kan. at 61.

Although the holding in *Dull* is limited to juvenile offenders convicted of aggravated indecent liberties with a child, a close examination of the language and legal reasoning behind the *Dull* decision indicates that the ruling is intended to be a categorical prohibition of lifetime postrelease supervision for all juveniles convicted of a sex offense. Our Supreme Court's broad language in *Dull* suggests that its holding is applicable to all juveniles convicted of any sex offense. For example, when examining whether lifetime supervision serves legitimate penological goals, the *Dull* court stated that the unique character traits of juveniles "diminish the penological goals of lifetime supervision for *juvenile sex offenders*." 302 Kan. at 61. Moreover, the caselaw supporting the decision in *Dull* addresses the constitutionality of imposing certain punishments on juveniles as a class, rather than a particular juvenile offender convicted of a particular crime. See generally, *Miller*, 132 S. Ct. 2455; *Graham*, 560 U.S. 48; *Roper*, 543 U.S. 551.

While the holding of *Dull* is limited, the reasoning expressed by the court is not. Throughout the opinion the court discusses its reasoning in terms of all juveniles, not just juveniles convicted of aggravated indecent liberties with a child. When discussing the culpability of juvenile offenders, the court focused on the characteristics of all juveniles. 302 Kan. at 51-52. The court noted that the legitimate penological goals served by lifetime postrelease supervision applied less to juvenile offenders because juveniles have

9

reduced culpability for their crimes and a lower risk of recidivism. 302 Kan. at 57-61. The court expressly stated that none of the factors it considered in determining whether juveniles should be treated differently than adults under the Eighth Amendment are crime specific. 302 Kan. at 58-59. It is clear that none of the reasoning expressed in *Dull* is applicable only to juveniles who were convicted of aggravated indecent liberties with a child. Rather, the reasoning applies to the characteristics of all juveniles in general.

The State argues that Medina's case is distinguishable from *Dull* because Medina was convicted of a more serious offense. It claims that the holding in *Dull* "was framed with the idea that since aggravated indecent liberties itself is a crime that does not involve penetration, it is not as serious." Thus, the State argues that because the language in *Dull* indicates that it is limited to aggravated indecent liberties with a child and Medina's conviction of aggravated criminal sodomy was more serious, *Dull* does not apply here.

The State's argument is unpersuasive for three reasons. First, the court in *Dull* did not frame the issue as turning on the lack of penetration and the relative "un-seriousness" of the crime. The State relies on the fact that, in his petition for review, Dull challenged the constitutionality of lifetime postrelease supervision for a sex offense that did not involve penetration and was committed by a juvenile. However, at oral argument the issue was specifically reframed to be applicable to any juvenile convicted of aggravated indecent liberties with a child and did not turn on details of the crime such as whether penetration was involved. See *Dull*, 302 Kan. at 40-41.

Second, as discussed above, our Supreme Court's language and reasoning expressed in *Dull* did not indicate that its holding was specifically limited to aggravated indecent liberties with a child; instead, the court's broad language and reasoning suggests that it applies to all juveniles convicted of a sex offense. Third, drawing lines as the State suggests in such a case-specific manner is not permitted in a categorical proportionality challenge because creating such specific classifications of offenders "'obliterate[s] the

10

distinction'" between case-specific and categorical challenges. *Dull*, 302 Kan. at 44 (quoting *Mossman*, 294 Kan. at 928).

For all of these reasons, we agree with Medina that the holding in *Dull* categorically applies to all juveniles convicted of a sex offense. As a result, we do not need to engage in a separate analysis under *Graham* to determine whether lifetime postrelease supervision is unconstitutional under the Eighth Amendment based on Medina's particular conviction of aggravated criminal sodomy.

The State makes a final claim that if *Dull* is not distinguishable and applies to all juvenile sex offenses, then it was wrongly decided. However, the Court of Appeals is duty bound to follow Kansas Supreme Court precedent absent some indication that the court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). There is no indication that our Supreme Court is departing from its holding in *Dull*.

We conclude that under *Dull*, mandatory lifetime postrelease supervision is categorically unconstitutional for all juveniles convicted of a sex offense. As a result, the imposition of lifetime postrelease supervision on Medina constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution. The lifetime postrelease supervision portion of Medina's sentence for aggravated criminal sodomy is vacated, and the case is remanded for resentencing. At resentencing, the district court cannot impose any term of postrelease supervision for Medina's conviction of aggravated criminal sodomy. See *Dull*, 302 Kan. at 61; *State v. Kessler*, 276 Kan. 202, 217, 73 P.3d 761 (2003) (where court's authority to impose sentence is controlled by statutory procedure found unconstitutional, court has no authority to impose such sentence).

Sentence vacated in part and remanded with directions.

11