NOT DESIGNATED FOR PUBLICATION

No. 114,180

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ARTHUR ANTHONY SHELTROWN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; RICHARD D. ANDERSON, judge. Opinion filed March 24, 2017. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Kendall Kaut*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., HILL, J., and WALKER, S.J.

*Per Curiam*:  Arthur Sheltrown makes two arguments in this appeal of his sentence for aggravated sexual battery. First, he contends that his 1994 juvenile adjudication for rape cannot be used to increase his sentence because it occurred well before the time that Kansas recognized a right to a jury trial for juveniles. He also argues that lifetime postrelease supervision violates the Eighth Amendment to the United States Constitution ban on cruel and unusual punishments.

1

Kansas Supreme Court precedent teaches us that older juvenile adjudications can be included in the calculation of a defendant's criminal history score. We reject Sheltrown's argument to the contrary. Additionally, our Supreme Court has ruled that mandatory lifetime postrelease supervision of all adult sex offenders is not cruel and unusual punishment and does serve legitimate peneological goals. Accordingly, we deny Sheltrown any relief on this point, as well.

*We need not repeat the sordid details of his crime.*

Sheltrown pled guilty to one count of aggravated sexual battery in violation of K.S.A. 2014 Supp. 21-5505(b)(1), a severity level 5 person felony. The State agreed to recommend the standard number of months in the grid box according to the Kansas Sentencing Guidelines. The State also agreed that, if Sheltrown filed a motion for a dispositional or durational departure, it would:

- stipulate that Sheltrown's prior juvenile adjudication for rape was remote in time;
- the fundamental nature of his conduct in this case was substantially different from the prior case; and
- the circumstances surrounding this case were atypical for convictions involving sexual battery.

The court accepted Sheltrown's guilty plea.

Sheltrown asked for a downward dispositional departure. At the sentencing hearing, the State argued in support of a downward durational departure but not a dispositional departure. The district court denied the departure motions and sentenced Sheltrown to 52 months' imprisonment and lifetime postrelease supervision. Sheltrown's criminal history score of D was based on a 1994 juvenile adjudication for rape.

*We cannot do what Sheltrown asks.*

Sheltrown contends that because the juvenile code did not guarantee him the right to a jury trial, the district court's use of his juvenile adjudication to increase his criminal history score violated his Sixth and Fourteenth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466, 20 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Sheltrown acknowledges that the Kansas Supreme Court has already decided that the use of juvenile adjudications in calculating a defendant's criminal history score does not violate *Apprendi* in *State v. Hitt*, 273 Kan. 224, 42 P.3d 732 (2002), but he contends that decision was erroneous.

We cannot overrule the Supreme Court.

Under *Apprendi*, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. See 530 U.S. at 490.

In *Hitt*, our Supreme Court held that juvenile adjudications count as prior convictions for purposes of *Apprendi*. "Juvenile adjudications are included within the historical cloak of recidivism and enjoy ample procedural safeguards; therefore, the *Apprendi* exception for prior convictions encompasses juvenile adjudications." 273 Kan. at 236. A juvenile adjudication need not be proven to a jury beyond a reasonable doubt to enhance a defendant's criminal history score. 273 Kan. at 236.

This court is duty bound to follow Kansas Supreme Court precedent, unless there is some indication the Supreme Court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015).

We see no indication that the Supreme Court is departing from *Hitt*. In *State v. Fischer*, 288 Kan. 470, 472-75, 203 P.3d 1269 (2009), the court revisited its *Hitt* holding

3

in light of *In re L.M.*, 286 Kan. 460, 469-70, 186 P.3d 164 (2008), in which the court held that because the juvenile justice system had become more characteristic of the adult criminal system, juveniles had a constitutional right to a jury trial. The *Fischer* court held that *Hitt* remained valid for juvenile adjudications that were final prior to the date the *In re L.M.* decision was filed. See 288 Kan. at 475. "[W]hen Fischer was adjudicated, she received all of the process she was due and was afforded all of the constitutional protections then required in such proceedings." 288 Kan. at 475.

Our Supreme Court again followed *Hitt* in *State v. Waller*, 299 Kan. 707, 728-29, 328 P.3d 1111 (2014).

Sheltrown cites an Ohio Supreme Court decision, *State v. Hand*, No. 2014-1814, 2016 WL 4486068, at *7-8 (Ohio 2016), that disagreed with the *Hitt* decision. But we are duty bound to follow the Kansas Supreme Court, not the Ohio court.

We find no error here.

*Precedent controls Sheltrown's categorical challenge.*

Before we can examine Sheltrown's challenge to lifetime postrelease supervision, we must address the parties' dispute on whether we can address this issue. The State argues we cannot because at the sentencing hearing, the judge told Sheltrown that if he was previously unaware he would be subject to lifetime postrelease supervision, then he could file a motion to withdraw his plea. The judge asked Sheltrown if he understood he was subject to mandatory lifetime postrelease supervision. Sheltrown stated, "Yes, sir, I do." The judge then asked if Sheltrown was prepared to go forward with sentencing. Sheltrown responded, "I would like to wrap this up, your Honor." The judge again asked, "You'd like to go ahead with the sentencing?" Sheltrown responded, "Yes." Sheltrown

did not object to the court's imposition of lifetime postrelease supervision. In other words, we should not address the issue since it was not raised in the district court.

Defendants may raise a categorical challenge under the Eighth Amendment for the first time on appeal because such a challenge is not case-specific and raises purely a question of law. *State v. Williams*, 298 Kan. 1075, 1084-85, 319 P.3d 528 (2014). Accordingly, our Supreme Court has permitted defendants to raise categorical challenges for the first time on appeal. See, *e.g.*, *State v. Dull*, 302 Kan. 32, 39, 351 P.3d 641 (2015).

The State contends that Sheltrown did not comply with Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 34) because Sheltrown failed to explain in his brief how this issue is properly before the court in the absence of an objection below. But the State is mistaken. Sheltrown did explain that his categorical challenge could be addressed in the absence of an objection below because the challenge presented purely a legal question. Sheltrown cited *Williams* for support.

Sheltrown challenges the constitutionality of lifetime postrelease supervision for the category of offenders convicted of aggravated sexual battery. Our statute, K.S.A. 2014 Supp. 21-5505(b), defines the crime:

> "Aggravated sexual battery is the touching of a victim who is 16 or more years of age and who does not consent thereto with the intent to arouse or satisfy the sexual desires of the offender or another and under any of the following circumstances:
>
> "(1) When the victim is overcome by force or fear;
> "(2) when the victim is unconscious or physically powerless; or
> "(3) when the victim is incapable of giving consent because of mental deficiency or disease, or when the victim is incapable of giving consent because of the effect of any alcoholic liquor, narcotic, drug or other substance, which condition was known by, or was reasonably apparent to, the offender."

5

Further, the legislature has labeled aggravated sexual battery as a sexually violent crime subject to mandatory lifetime postrelease supervision. K.S.A. 2014 Supp. 22-3717(d)(1)(G); K.S.A. 2014 Supp. 22-3717(d)(5)(I).

Panels of this court have concluded that the sentence of lifetime postrelease supervision for aggravated sexual battery is not categorically disproportional under the Eighth Amendment to the United States Constitution. See *State v. Kelly*, No. 108,072, 2014 WL 4231185, at \*2-4 (Kan. App. 2014) (unpublished opinion); *State v. Lazo-Gaitam*, No. 103,818, 2013 WL 678205, at \*6-7 (Kan. App. 2013) (unpublished opinion); *State v. Collins*, No. 100,996, 2012 WL 6734500, at \*5-8 (Kan. App. 2012) (unpublished opinion). Sheltrown provides no compelling reason to depart from these decisions.

Sheltrown contends that only Kansas and Nebraska impose lifetime supervision without any possibility of discharge or release for his type of offense. He cites four other states that have mandatory lifetime postrelease supervision for this offense but allow the possibility of an offender's discharge or release from supervision. He contends other states reserve the sentence for more serious offenses (such as those involving force, prostitution, pornography, or children under 14), repeat offenders, or offenders having characteristics that make them dangerous or likely to reoffend.

Sheltrown's argument is unpersuasive for several reasons. First, Sheltrown errs by distinguishing aggravated sexual battery from sexual offenses involving force. Under Kansas law, aggravated sexual battery requires that the victim is:

- overcome by force or fear;
- the victim is unconscious or physically powerless; or

6

- the victim is incapable of giving consent because of mental deficiency or disease, or because of the effect of alcohol, narcotic, drug, or other substance. K.S.A. 2014 Supp. 21-5505(b).

The difference between aggravated sexual battery and rape under Kansas law is not the lack of a force element but that rape involves sexual intercourse, whereas aggravated sexual battery involves touching. Compare K.S.A. 2014 Supp. 21-5503(a) with K.S.A. 2014 Supp. 21-5505(b).

Second, aggravated sexual battery is not a less severe offense than another offense for which our Supreme Court has upheld the constitutionality of lifetime postrelease supervision against a categorical challenge. In *State v. Cameron*, 294 Kan. 884, 898, 281 P.3d 143 (2012), the court held that lifetime postrelease supervision was not categorically disproportionate for the crime of aggravated indecent solicitation of a child. Like aggravated indecent solicitation of a child, aggravated sexual battery is a severity level 5 person felony under Kansas law. K.S.A. 2014 Supp. 21-5508(c)(2); K.S.A. 2014 Supp. 21-5505(c)(2).

Third, our Supreme Court has previously refused to find that mandatory lifetime postrelease supervision is cruel or unusual punishment even though "only a handful of states impose punishment as absolute as Kansas' requirement." *State v. Mossman*, 294 Kan. 901, 920, 281 P.3d 153 (2012). And in *State v. Reed*, 51 Kan. App. 2d 107, 111-15, 341 P.3d 616 (2015), this court upheld lifetime postrelease supervision against a categorical challenge even though the court noted that other than Kansas, Nebraska is the only state that imposes mandatory lifetime postrelease supervision for the offense in question.

Finally, the fact that Kansas is one of few states that impose lifetime postrelease supervision without the possibility of release for the crime of aggravated sexual battery

7

does not mean that there is a national consensus condemning such punishment. See *Collins*, 2012 WL 6734500, at *7.

*We must give our own view of this punishment.*

Our United States Supreme Court has stated, "Community consensus, while 'entitled to great weight,' is not itself determinative of whether a punishment is cruel and unusual." *Graham v. Florida*, 560 U.S. 48, 67, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). The court must use its own judgment and consider the culpability of the offenders in light of their crimes and characteristics and the severity of the punishment. The court also considers whether the sentencing rule at issue serves legitimate peneological goals— retribution, deterrence, incapacitation, and rehabilitation. 560 U.S. at 67, 71.

Sheltrown emphasizes the harshness of lifetime postrelease supervision, noting the restriction on his ability to travel, prohibition on consuming alcohol, and being sentenced to life in prison upon conviction for a new felony or, possibly, a misdemeanor. While severe, lifetime postrelease supervision is not as severe a penalty as capital punishment or mandatory life in prison without parole for a nonhomicide offense—the categories of punishment the United States Supreme Court has found unconstitutional in certain circumstances. The death penalty is "unique in its severity and irrevocability" and life without parole is "the second most severe penalty permitted by law." *Graham*, 560 U.S. at 69. In contrast, "while the sentence is lengthy, lifetime postrelease supervision is not as harsh a punishment as imprisonment and is aimed at safely integrating a sex offender into society and protecting the public." *Cameron*, 294 Kan. at 896.

Moreover, Sheltrown does not belong to certain categories of offenders that are treated differently under the law. The category challenged here is not juvenile offenders—rather, it is all offenders convicted of aggravated sexual battery. The United States Supreme Court treats children "constitutionally different from adults for purposes

8

of sentencing. Because juveniles have diminished culpability and greater prospects for reform . . . 'they are less deserving of the most severe punishments.'" *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 2464, 183 L. Ed. 2d 407 (2012). Recently, our Supreme Court has applied this analysis to hold a sentence of mandatory lifetime postrelease supervision categorically unconstitutional when imposed on a juvenile who was convicted of a sex offense. See *State v. Dull*, 302 Kan. 32, Syl. ¶ 8, 351 P.3d 641 (2015), *cert. denied* 136 S. Ct. 1364 (2016); *State v. Medina*, 53 Kan. App. 2d 89, Syl. ¶ 2, 384 P.3d 26 (2016). But this analysis is inapplicable to adult offenders. Our Supreme Court has repeatedly held that lifetime postrelease supervision is constitutional for adult sex offenders. See *State v. Williams*, 298 Kan. 1075, 1090, 319 P.3d 528 (2014); *Mossman*, 294 Kan. at 930; *Cameron*, 294 Kan. at 898.

Also, Sheltrown does not belong to the class of "first-time offenders." He has a prior juvenile adjudication for rape. In *Mossman* and *Williams*, the Kansas Supreme Court upheld the constitutionality of lifetime postrelease supervision even though it considered the defendants to be in a class of first-time offenders. 294 Kan. at 928-30; 298 Kan. at 1086-90.

Sheltrown contends that offenders convicted of aggravated sexual battery are less culpable than those convicted of crimes involving sexual penetration, prostitution, pornography, or children under 14. He argues society's need for retribution is thus diminished. However, aggravated sexual battery is a sexually violent crime, and an offender is not any less culpable because he did not also commit other sexually violent crimes. This court rejected a similar argument in *Kelly*, 2014 WL 4231185, at *3.

Sheltrown argues that lifetime postrelease supervision serves no peneological goals. But our Supreme Court has held otherwise. The *Cameron* court held that lifetime postrelease supervision serves legitimate peneological goals. 294 Kan. at 898; see *Lazo-Gaitam*, 2013 WL 678205, at *7. Supervised release helps rehabilitate sex offenders.

9

Further, supervised release can incapacitate sex offenders because they are kept under the "watchful eye" of probation officers. *Cameron*, 294 Kan. at 898. Rehabilitation and incapacitation are critical goals of the criminal justice system given the propensity of sex offenders to reoffend. See *Mossman*, 294 Kan. at 930. The *Collins* panel concluded that lifetime postrelease supervision serves the combined peneological goals of rehabilitation, incapacitation, retribution, and deterrence. 2012 WL 6734500, at *8.

Lifetime postrelease supervision is not inherently disproportionate for the category of offenders convicted of aggravated sexual battery.

Affirmed.