NOT DESIGNATED FOR PUBLICATION

No. 121,153

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEFFREY DOUGLAS MASTERSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; DAVID DEBENHAM, judge. Opinion filed August 14, 2020.
Affirmed in part, sentences vacated, and remanded with directions.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for
appellee.

Before MALONE, P.J., MCANANY, S.J., and BURGESS, S.J.

PER CURIAM: This appeal deals with the situation in which the district court
imposed lawful presumptive sentences under our sentencing guidelines but then
attempted to increase those sentences in an improper manner in order to reach a total
sentence contemplated by a plea agreement. In this appeal we address the question
whether, in responding to this sentencing error, the district court may vacate its otherwise
lawfully imposed sentences and resentence the defendant to much higher terms of
imprisonment in order to reach the total sentence contemplated by the plea agreement.
We conclude that the district court may not, and we vacate the defendant's current
sentences and remand for resentencing.

1

We find no merit in the defendant's second issue, that his age at the time of his crimes had to be established by a jury before the court could impose lifetime postrelease supervision.

## PROCEDURAL HISTORY

Jeffrey Douglas Masterson was charged with two severity level 5 counts of sexual exploitation of a child, six off-grid felony counts of sexual exploitation of a child, plus a severity level 9 count of interference with law enforcement. He entered into a plea agreement with the State to resolve all nine charges. In accordance with the plea agreement, he pled guilty to three severity level 5 person felonies of sexual exploitation of a child, one of which the State agreed to reduce from an off-grid felony to a level 5 person felony. As part of the agreement the State agreed to dismiss the other six felony charges against him. The plea agreement contained the following:

> "Both parties shall jointly recommend that the Court impose a sentence of 105 months in prison. The parties shall recommend that the sentences for Counts 1 and 2 be made consecutive to one another. Both parties shall jointly recommend that the Court grant a motion for an upward durational departure and impose a sentence of 105 months in prison. There shall be no request for probation or border box findings by the Defendant."

This was a recommendation for an upward durational departure sentence. Pursuant to the agreement, Masterson waived his right to have the upward departure factors proven to a jury. Masterson and the State further agreed on three aggravating factors to support the departure motion: (1) an agreement between the parties to impose a departure sentence; (2) the State's dismissal of six off-grid felonies in exchange for the plea and a promise to support a motion for an upward departure; and (3) the harm associated with the crime being greater than typical.

The State filed a motion for upward durational departure along with the plea agreement. Masterson joined the State in recommending an upward durational departure and 105 months' imprisonment.

At the plea hearing, the State informed the district court that the State expected to recommend that the first two counts run consecutively for "sixty-some months" and then the district court would have the authority to upwardly depart from there. After advising Masterson of his rights, the district court accepted Masterson's guilty pleas.

At the sentencing hearing that followed, the State provided the three agreed-upon reasons for the upward durational departure. The State recommended that the district court impose standard sentences of 32 months' imprisonment on Count 1; 32 months' imprisonment on Count 2, to be served consecutively; and 32-months' imprisonment sentence on Count 3, to be served concurrently with Counts 1 and 2. The State explained:

> "If the Court were to follow this recommendation, then the sentence the Court would impose would be sixty-four months. If the Court were to then grant the State's Motion for an Upward Departure, it could increase the sentence by no more than double sixty-four months, and what we are asking for is under the terms of our plea agreement for the Court to impose a total sentence of 105 months in custody of the Secretary of Corrections."

Masterson's counsel confirmed the State's understanding as to how the sentences should be structured to conform to the plea agreement without the court having to upward depart "on each individual crime."

The district court confirmed that Masterson waived his right to a jury determination of the upward departure factors, found the three proposed factors were

3

substantial and compelling reasons to depart, and sentenced Masterson consistent with the plea agreement as follows:

> Count 1—32 months' imprisonment;
> Count 2—32 months' imprisonment, consecutive to the sentence in Count 1; and
> Count 3—32 months' imprisonment, concurrent with the sentences in Counts 1 and 2.

These sentences were the standard guidelines sentences for these crimes. The district court then upwardly departed from the prison terms under Counts 1 and 2 of 64 months and imposed a total prison term of 105 months.

Masterson later moved to correct his illegal sentence, arguing that the sentencing court did not follow the proper sentencing procedure. He contended that in correcting the misapplication of the sentencing law the court could not alter the legal sentences for Counts 1 and 2. He argued that the controlling term of confinement, based on the consecutive guideline sentences in Counts 1 and 2, should be 64 months.

At the hearing that followed, the prosecutor conceded that the parties had erroneously recommended that the Court "impose a departure that I don't believe was lawful because of the mechanics of it." The sentences imposed violated K.S.A. 2019 Supp. 21-6819(c)'s procedures and limits on departure sentences because the district court upwardly departed on the entire sentence instead of each individual crime. The prosecutor explained:

> "[B]ecause the parties asked the Court to impose a base sentence and then depart at the end, in terms of we asked the Court to impose a particular base sentence, and then a particular sentence on another count, but then double at the end and we didn't ask the

Court to impose a departure on the original base count. But what we did was lead the Court into error."

Masterson and the State agreed with the court's observation that

"what the Count should have done, was entered a sentence of let's say 32 months on Count I and then departed on Count I to up to 64 months then entered a sentence on Count II I think it was 32 or 64. The court could have departed on that up to 64 and they ran those two consecutive and could have resulted in a sentence of 128 months. Although the parties could have agreed to 105 so the Court could have still departed on Count II to an amount less than a total of 64, running those consecutive, and arriving at a sentence of 105 months."

At the conclusion of the hearing the district court found that because both parties misunderstood the applicable sentencing law, the procedure they recommended at sentencing could not legally result in the agreed-upon sentence. The district court vacated the sentences on all three counts because they "defeated the terms of the plea agreement."

Masterson moved the court to reconsider, arguing that the district court only had jurisdiction to correct the illegal departure because all three sentences imposed were lawful guideline sentences. He argued that in correcting the misapplication of the sentencing law the court could not alter the legal sentences for Counts 1 and 2, so the controlling sentence should be 64 months. Thus, he contended, the district court must reinstate his 32-month sentences for each count and run Counts 1 and 2 consecutively for a total of 64 months.

At Masterson's resentencing hearing the district court stated the original sentences imposed were the result of a mutual mistake. The court found some merit in the State's equitable estoppel argument and adopted the State's reasoning. The court resentenced Masterson as follows:

5

Count 1—an upward departure sentence of 53 months' imprisonment (up from the guideline 32 months previously imposed);

Count 2—an upward departure sentence of 52 months' imprisonment, consecutive to the sentence in Count 1 (up from the guideline 32 months previously imposed); and

Count 3—32 months' imprisonment, concurrent with sentences in Counts 1 and 2.

The court also ordered Masterson to serve lifetime postrelease supervision.

Masterson appeals. He contends that the district court lacked jurisdiction to vacate his lawful sentences. According to Masterson, his sentences on Counts 1, 2, and 3 were legal sentences and, thus, the district court only had jurisdiction to set aside its attempted departure from his guideline sentences. He asks us to remand with instructions to set aside the court's resentencing and reinstate the guideline sentences which, as originally imposed, have a controlling term of 64 months. He also contends that the district court violated his constitutional rights by sentencing him to lifetime postrelease supervision without a jury finding that he was age 18 or older when he committed his crimes.

## ANALYSIS

I. *The Legality of the Court's Resentencing*

Our review standard in interpreting our sentencing statutes and in determining whether Masterson's sentences are illegal is de novo. See *State v. Jamerson*, 309 Kan. 211, 214, 433 P.3d 698 (2019).

*Preservation*

The State contends that this issue has not been preserved for appeal because Masterson's sentences conform to the applicable statutory provisions, in both character and punishment. See K.S.A. 2019 Supp. 22-3504(c)(1). The State asserts Masterson's complaint is about the procedure the district court used, "which is not a component of an illegal sentence."

But Masterson's issue is with the district court's decision to vacate the entirety of his original sentences and to resentence him a second time. He claims that the court lacked jurisdiction to increase his sentences on Counts 1 and 2 because the court had already imposed legal sentences on those counts and could not change them, resulting in illegal sentences. A sentence is illegal if it is imposed by a court without jurisdiction to do so. K.S.A. 2019 Supp. 22-3504(c)(1). Masterson's illegal sentence argument has been preserved for appeal.

*Jurisdiction*

The State also argues that we lack jurisdiction to hear this appeal because the sentence was the result of an agreement between the parties. The State relies on K.S.A. 2019 Supp. 21-6820(c)(2), which provides: "On appeal from a judgment of conviction . . . the appellate court shall not review: . . . any sentence resulting from an agreement between the state and the defendant which the sentencing court approves on the record."

But, the procedures for imposing a departure sentence must be followed and cannot be ignored by the courts. *State v. Jackson*, 297 Kan. 110, 113, 298 P.3d 344 (2013). The parties may not agree to an illegal sentence. See *State v. Lehman*, 308 Kan. 1089, 1093, 427 P.3d 840 (2018). Thus, "a sentence that does not comply with required

7

statutory procedures is an illegal sentence." *Jackson*, 297 Kan. at 114-15. Such a sentence may be corrected at any time. K.S.A. 2019 Supp. 22-3504(a). We have jurisdiction to consider this appeal.

*Masterson's Claims*

Masterson claims the individual sentences originally imposed for his separate crimes were legal sentences and the district court had no jurisdiction to vacate them and resentence him for those crimes. The district court had the authority to upwardly depart to twice his base guideline sentence of 32 months in Count 1 when it was originally imposed. That, together with his consecutive 32-month guideline sentence for Count 2, would have yielded a controlling term of 96 months. But the court failed to do so. Instead, the court imposed two lawful consecutive sentences of 32 months and a third lawful concurrent sentence of 32 months, for a controlling term of 64 months in prison. He asserts that the upward departure the district court attempted to impose was unlawful, so the only jurisdiction the district court had was to set aside the separate departure order entered at his original sentencing.

*The State's Claims*

Aside from its preservation and jurisdiction issues, which we have already addressed, the State asserts the propriety of the district court's actions in resentencing Masterson. It also claims that by filing his motion to correct illegal sentence (and presumably by pursuing this appeal), Masterson has breached his contractual duty to act fairly and in good faith. The State also contends that Masterson is equitably estopped from advancing the arguments he makes today. We also note the district court's reasoning under the contract principle of mutual mistake. Before getting to that issue and the State's contract and equity arguments, we turn to the underlying issue of the propriety of the district court's actions.

*The Propriety of the District Court's Actions*

We turn first to three key Kansas Supreme Court cases discussed by both parties. Considered in chronological order, they are *State v. Snow*, 282 Kan. 323, 144 P.3d 729 (2006); *State v. Guder*, 293 Kan. 763, 267 P.3d 751 (2012); and *Jamerson*, 309 Kan. 211.

State v. Snow

In *Snow*, the defendant engaged in a string of burglaries of various businesses which led to him being convicted on 15 counts of nonresidential burglary, theft, and criminal damage to property and 4 counts of misdemeanor criminal damage to property. At sentencing the court used one of Snow's burglary convictions as the base crime. Given his criminal history, the court invoked the Special Rule that allows a prison sentence without departure findings, rather than the guidelines' presumptive sentence, when the defendant was on probation at the time of his or her crimes. The court imposed the maximum presumptive sentence of 23 months for the base burglary conviction. The court then imposed the aggravated presumptive sentence for each of Snow's other 14 counts, ordered that they run consecutively, and denied probation. Snow received concurrent sentences for his four misdemeanor convictions. The total of all of Snow's felony sentences was 187 months.

The district court did not depart on any of Snow's sentences. Under K.S.A. 2005 Supp. 21-4720(b)(4), Snow's total controlling sentence on these multiple convictions was limited to twice the base sentence of 23 months, which was 46 months. The Supreme Court vacated Snow's sentences and remanded to the district court for resentencing with the following guidance:

9

"Sentences that do not conform to the statutory provisions are illegal and must be remanded to the district court to correct the illegal sentence. *State v. Shaw*, 259 Kan. 3, 12, 910 P.2d 809 (1996). When a defendant is convicted on several counts, a single judgment should be pronounced declaring the full measure of punishment to be imposed for all of the offenses. *State v. Woodbury*, 133 Kan. 1, 2, 298 Pac. 794 (1931) (concluding that resentencing for all 10 counts was proper even though only 7 of the counts had been sentenced incorrectly). When the defendant's sentence violates the maximum consecutive sentence allowed by K.S.A. 2005 Supp. 21-4720, the district court can resentence the defendant for all counts and change the base sentence to reflect aggravated durational departure factors previously found to increase the total consecutive sentence pursuant to K.S.A. 2005 Supp. 21-4720." *Snow*, 282 Kan. at 342.

*Snow* relied on *Woodbury* as controlling authority. We will discuss the fate of *Woodbury* in connection with our next case, *Guder*.

State v. Guder

In *Guder*, the defendant pled guilty in 2001 to (1) illegally manufacturing a controlled substance, (2) cultivating marijuana, (3) possessing drug paraphernalia, and (4) four counts of criminal possession of a weapon. He was sentenced to prison in 2001 to serve:

(1) 162 months for illegal manufacturing;

(2) 15 months for cultivating marijuana, consecutive to (1);

(3) 8 months each on the 4 weapons convictions, concurrent with (2); and

(4) 11 months for possessing paraphernalia conviction, concurrent with (3).

Controlling term: 177 months in prison.

Guder appealed his sentence in 2001 but did not perfect the appeal.

In 2004 our Supreme Court handed down *State v. McAdam*, 277 Kan. 136, 83 P.3d 161 (2004). Four years later, the Court of Appeals granted Guder's request to docket his appeal out of time. On the merits, the Court of Appeals found that Guder was entitled to be resentenced on his illegal manufacturing conviction because of the holding in *McAdam*. At Guder's resentencing the court imposed the following:

(1) An aggravated 32 months guideline sentence for illegal manufacturing (the *McAdam* issue);

(2) 15 months for cultivating marijuana, consecutive to (1);

(3) 11 months for possessing paraphernalia conviction, *consecutive* to (1); and

(4) 8 months each on the four weapons convictions, concurrent with (3).

Controlling term:  58 months in prison.

Guder appealed, contending that the district court had no authority to change his lawful paraphernalia sentence from concurrent to consecutive. The Supreme Court noted its early holding in *Woodbury*, in which the court found that "a sentence pronounced following conviction is a singular entity that cannot be subdivided into correct and erroneous counts, and the sentencing court therefore had the latitude on remand to modify its original sentence on all counts, including those for which no error had been found." *Guder*, 293 Kan. at 765. But the *Guder* court stated:

"Statutory changes to the jurisdiction of district courts to modify sentences have superseded the *Woodbury* rationale. In *Anthony*, 274 Kan. at 1001, this court framed the relevant question this way:  'Does statutory authority exist for the modification of legal sentences after imposition?' We concluded that a district court has no authority to modify a sentence unless plain statutory language provides such authority. [Citation omitted.]

. . . .

11

"When it enacted the KSGA, our legislature explicitly addressed remands following reversal. [Citing K.S.A. 21-4720(b)(5).]

"Nothing in the statutory scheme, however, allows resentencing on other convictions following the vacating of a *sentence* on appeal. . . . We will not add words to the statute that would provide jurisdiction to resentence on other counts." *Guder*, 293 Kan. at 766.

The *Guder* court vacated the modification of Guder's paraphernalia conviction from concurrent to consecutive and remanded for another resentencing. "In doing so, we disapprove of the holding in *Snow* to the extent that it is contrary to this opinion." 293 Kan. at 767.

This holding was reaffirmed by the Supreme Court six years later in *State v. Warren*, 307 Kan. 609, 613, 412 P.3d 993 (2018). As it stated in Syl. ¶ 1, "When multiconviction cases are remanded for resentencing, the Kansas Sentencing Guidelines Act prohibits district courts from modifying sentences that have not been vacated by the appellate court. An exception exists when the district court must alter such a sentence as a matter of law to avoid an illegal sentence." 307 Kan. 609, Syl. ¶ 1.

State v. Jamerson

In *Jamerson*, the sentencing court followed the terms of the parties' plea agreement and in 2001 imposed on Jamerson:

(1)  a standard guidelines sentence of 253 months for second-degree murder'
(2) a downward departure sentence of 35 months for aggravated robbery, consecutive to (1); and
(3) a downward departure sentence of 35 months for conspiracy, concurrent with (1) and (2).

12

Controlling term: 288 months in prison.

In 2015, Jamerson moved to correct an illegal sentence. He claimed an incorrect criminal history score resulted in an illegal sentence on his second-degree murder conviction. The district court ordered a resentencing when it was shown that the court had used an incorrect criminal history score for Jamison and that score was used to calculate a non-base sentence.

The district court determined that Jamerson's aggravated robbery sentence was legal because the criminal history error did not affect his sentence for this crime. The downward departure sentence he received on his aggravated robbery conviction was the same as a guidelines sentence for a defendant with no criminal history. But the conspiracy sentence was illegal when applying the corrected criminal history score. The correct guideline presumptive sentence range was 31-32-34 months, and Jamison had been sentenced to 35 months.

In 2015, the district court resentenced Jamerson on all the counts, though there was no error in the aggravated robbery sentence. In an apparent effort to "to keep the new sentence as close as possible to the one in 2001," 309 Kan. at 213, and as close as possible to the plea agreement, the district court imposed:

(1) an aggravated guidelines sentence of 186 months for the murder conviction (*down from the 253 months previously imposed*);

(2) a standard guideline sentence of 59 months for the aggravated robbery conviction (*not the 35-month downward departure sentence previously imposed*) consecutive to (1); and

(3) an aggravated guideline sentence of 34 months for the conspiracy conviction (*down from the 35-month sentence previously imposed*) consecutive to (1) and (2).

Controlling term: 279 months in prison.

Jamerson appealed. With respect to the sentence for his aggravated robbery conviction, he claimed the court had no authority to increase his original legal 35-month sentence to 59 months. The Court of Appeals agreed. The State petitioned our Supreme Court for review, and the court took up the case.

The State argued that the Supreme Court should reexamine *Guder*, which leads to an absurd result when the State and the defendant reach a plea agreement which is based on the entirety of the sentences to be imposed. "The State complains that under *Guder* a defendant can game the system and undermine a plea agreement by waiting until after sentencing to object to incorrect criminal history scores." *Jamerson*, 309 Kan. at 214. The Supreme Court rejected this argument, finding that the *Guder* court had thoroughly analyzed legislative intent and the effect of the Kansas Sentencing Guidelines on the sentencing court's common law powers.

The State also argued that *Guder* and its progeny should only apply to cases following a remand. The *Jamerson* court stated:

> "Procedurally, we find no reason a district court's conclusion (that a sentence is illegal) is different in any legally significant way from the holding by this court that a sentence is illegal under K.S.A. 22-3504. In either scenario the sentence must be corrected to become one complying with the KSGA. On concluding one or more of the sentences in a multiconviction case to be illegal, the district court, like an appellate court, must vacate the illegal sentence and correct it by resentencing in accordance with the KSGA. See *State v. Warren*, 307 Kan. 609, 412 P.3d 993 (2018) (when multiconviction cases are remanded for resentencing, district courts may not modify sentences that have not been vacated and are not illegal). But this does not mean the district court has authority to resentence anew for all of the convictions in a multiple conviction case. Rather, as we

14

have held in cases directing resentencing of an illegal sentence on remand, the court may vacate and resentence only the illegal one in a multiconviction case. *Guder*, 293 Kan. 763." *Jamerson*, 309 Kan. at 216.

The Supreme Court concluded that the district court erred in increasing the legal aggravated robbery sentence from 35 to 59 months. 309 Kan. at 218.

Turning to the State's arguments, the State cites from *Jamerson* the following to support the district court's authority to resentence Masterson by departing on prior imposed—and on their face lawful—sentences: "[T]his court has repeatedly held that the KSGA deprived district courts of the jurisdiction to modify sentences *except* to correct arithmetic or clerical errors, *to consider or reconsider departures from presumptive sentences*, or to modify sentences by reinstating previously revoked probations." (Emphasis added.) *Jamerson*, 309 Kan. at 215; see *Guder*, 293 Kan. at 766.

The only case cited by the State as an example of the proper reconsideration of a departure sentence is *State v. Peterson*, 25 Kan. App. 2d 354, 358, 964 P.2d 695 (1998). In the applicable earlier appeal in that case, *State v. Peterson*, 22 Kan. App. 2d 572, 576, 920 P.2d 463 (1996), a departure sentence was vacated and the case was remanded for resentencing in order for the court to state on the record its substantial and compelling reasons for departing—reasons which were absent when the departure sentence was originally imposed. On remand, the district court imposed the same sentence but provided the missing reasons for departing. *Peterson*, 25 Kan. App. 2d at 356. Obviously this is not the situation here.

In *Guder*, the court expressed the same exceptions to the rule excluding jurisdiction to modify KSGA sentences. 293 Kan. at 766. The *Guder* court cited four exemplars of that rule:

15

*State v. McKnight*, 292 Kan. 776, 257 P.3d 339 (2011). There, the district court revoked the defendant's probation, ordered him to serve 22 months in prison (reduced from the originally imposed 30 months), and mistakenly ordered no postrelease supervision. At a later hearing, the court uncovered its mistake and changed the sentence to include 24 months' postrelease supervision. The Supreme Court found that McKnight's 22-month prison sentence without postrelease supervision was a legal lesser sentence. "'A sentence is effective upon pronouncement from the bench, regardless of the court's intent at the time the sentence is pronounced.' [Citation omitted.] The trial court imposed a legal sentence; therefore, the court did not have jurisdiction to later modify that sentence by adding postrelease supervision. See *McCoin*, 278 Kan. at 468." *McKnight*, 292 Kan. at 783. McKnight supports Masterson's argument that his legal guideline sentences were effective upon pronouncement, and that the district court had no jurisdiction to correct the sentencing mistake by modify the original sentences imposed.

*State v. McDaniel*, 292 Kan. 443, 254 P.3d 534 (2011). The defendant was sentenced to prison for aggravated battery. The presentence investigation report referred to $21,269.06 in restitution. The issue of restitution came up at the sentencing hearing. The defendant objected to the amount, and the court set the matter over for a separate hearing, at which the court ordered restitution in the amount of $7,744.26, an amount to which the defendant stipulated. The Supreme Court stated: "A district judge has no jurisdiction to change a sentence once it is pronounced." 292 Kan. at 445. But it determined the restitution order "altered nothing about McDaniel's sentence; it merely completed it." 292 Kan. at 448. *McDaniel* also supports Masterson's position. At Masterson's resentencing, the district court did not "complete" his sentences, the court entered entirely new sentences that differed from those originally imposed.

16

*State v. Ballard*, 289 Kan. 1000, 218 P.3d 432 (2009). The syllabus states: "When a lawful sentence has been imposed, the sentencing court has no jurisdiction to modify that sentence except to correct arithmetic or clerical errors. However, an illegal sentence can be corrected at any time." 289 Kan. 1001, Syl. ¶ 10. *Ballard* also supports Masterson's position.

*State v. Miller*, 260 Kan. 892, 926 P.2d 652 (1996). The defendant moved for downward durational and dispositional departures. At sentencing, the district court denied the motion and imposed a prison sentence. Over the following weekend, the district judge thought further about the sentence he had imposed and decided he should have granted a departure. He scheduled a second hearing at which he granted Miller five years' probation. On the State's appeal, the Supreme Court stated: "Despite defendant's arguments to the contrary, nothing in these statutes affords a district court continuing jurisdiction after a sentencing proceeding is concluded. . . . We conclude the district court's modified sentence . . . and findings relative to departure are void for lack of jurisdiction." 260 Kan. at 900. *Miller*, like the others cited in *Guder*, support Masterson's position.

Contrary to the State's position, we find that Masterson's original three sentences were lawful sentences. At the sentencing hearing, the district court stated:

> "As a result in this case, the Court's gonna sentence you on Count 1 to thirty-two months in the Secretary of Corrections.
> "On Count 2, the Court will also sentence you to a term of thirty-two months in the Secretary of Corrections. Those sentences will run consecutive to each other.
> "The Court will sentence you on Count 3 to thirty-two months in the Secretary of Corrections, and that sentence will run concurrent to the sentence I imposed in Count 1 and Count 2."

17

Only after imposing these lawful sentences did the court take up the issue of a departure. The court found substantial and compelling reasons to depart, "[s]o I will depart upward to 105 months on that sentence."

It was this departure on already imposed lawful sentences that was improper because the district court upwardly departed on the entire sentence instead of each individual crime, contrary to K.S.A. 2019 Supp. 21-6819(c). Rather than simply curing the improper departure, the district court resentenced Masterson for Counts 1 and 2 and imposed sentences which were different from the lawful sentences previously imposed.

The principle applied in *Woodbury* and *Snow* that in a multiconviction case the court can resentence all counts, whether lawful or not, is no longer valid. As the Supreme Court stated in in *Warren*,

> "When multiconviction cases are remanded for resentencing, the Kansas Sentencing Guidelines Act prohibits district courts from modifying sentences that have not been vacated by the appellate court. An exception exists when the district court must alter such a sentence as a matter of law to avoid an illegal sentence." 307 Kan. 609, Syl. ¶ 1.

In Masterson's case, there was no imposition of a series of consecutive sentences that violated the maximum aggregated duration set in K.S.A. 2019 Supp. 21-6819(b)(4). And when Masterson was resentenced, the court did not reduce a previously imposed departure sentence in order to comply with K.S.A. 2019 Supp. 21-6819(c)(3). Rather, at Masterson's original sentencing the district court imposed guideline sentences on each of Masterson's convictions but did not impose any departure consistent with K.S.A. 2019 Supp. 21-6819(c)(3). At resentencing the court did not need to depart from previously imposed legal sentences "to avoid an illegal sentence." 307 Kan. 609, Syl. ¶ 1. The exception described in *Warren* does not apply.

18

But what about the language in *Warren* and other cases noted above that refers to these resentencing limitations coming into play when a sentence has been vacated on appeal and the case remanded for resentencing? The answer is found in *Jamerson* where the court stated:

> "Procedurally, we find no reason a district court's conclusion (that a sentence is illegal) is different in any legally significant way from the holding by this court that a sentence is illegal under K.S.A. 22-3504. In either scenario the sentence must be corrected to become one complying with the KSGA. On concluding one or more of the sentences in a multiconviction case to be illegal, the district court, like an appellate court, must vacate the illegal sentence and correct it by resentencing in accordance with the KSGA."
> *Jamerson*, 309 Kan. at 216.

Thus, these resentencing rules apply not only following an appellate remand, but also following a ruling by the district court vacating an illegal sentence.

Here, the problem is twofold. The district court vacated legal sentences, and then the court changed those legal sentences at the resentencing hearing. We find no case—and the State cites none—which permits the sentencing court to set aside legal guideline sentences and resentence a defendant in the manner employed in Masterson's case.

*McKnight* serves as a good example. There, the district court revoked the defendant's probation, sent him to prison, but mistakenly did not order postrelease supervision. Upon uncovering the mistake, the court could not correct its error by changing the defendant's legal sentence to include postrelease supervision. Here, the district court mistakenly failed to depart on the individual sentences it imposed on Masterson. Because Masterson's sentences were legal sentences, the court could not later change them by departing from the standard guideline sentences previously imposed. The district court did not have jurisdiction to increase Masterson's sentences from 32 months to 53 months on Count 1, and from 32 months to 52 months on Count 2.

*Mutual Mistake*

The district court at Masterson's resentencing relied on the principle of mutual mistake to justify setting aside Masterson's sentences and resentencing him.

Masterson's plea agreement was the contract entered into by the parties. As the district court found, it is clear and complete on its face. It contains the mutual agreements of the parties which constitute the consideration supporting it. Masterson agreed to enter certain pleas, agreed to recommend to the court that the sentences on two counts be consecutive, agreed to recommend to the court departure sentences for a controlling term of up to 105 months, and agreed to stipulate to the departure factors. In exchange, the State agreed to dismiss other charges. Both parties did what they contracted to do at the sentencing hearing.

Masterson's plea agreement does not address the mechanics of how the sentencing court could properly arrive at the sentences the parties agreed to request. There is no evidence that entering into the written plea agreement was predicated upon the district court sentencing Masterson in the manner employed at Masterson's original sentencing. We find no mutual mistake in the written plea agreement.

Besides, if there had been "a mutual mistake, either of law or fact, on the terms of the contract, the contract is not binding on the parties." *Albers v. Nelson*, 248 Kan. 575, 580, 809 P.2d 1194 (1991). If there was a mutual mistake of law, the remedy would have been to void the settlement agreement, allow Masterson to set aside his pleas which were premised on the agreement, and set the matter for trial. This the district court did not do.

If we look to the statements of the attorneys at the sentencing hearing, Masterson certainly was not so well versed in the law as to understand the statutory technicalities of

20

sentencing. That is what his attorney was for. There was no mutual mistake between the contracting parties—Masterson and the State. Masterson would have no idea whether the proposed sentencing procedure was proper.

But the State argues that Masterson is bound by the statements his attorney/agent made. Thus, the prosecutor's statements at sentencing and the concurrence of defense counsel, even though made without conferring with Masterson, constituted a contract. But defense counsel's concurrence with the prosecutor's proposed sentencing procedure does not constitute a contract. There was no bargained-for exchange. There was no consideration. The statements made by counsel at the sentencing hearing do not constitute a contract. The contract principle of mutual mistake does not apply to these facts.

We have examined cases dealing with the statutory right of a defendant to withdraw a plea after sentencing upon a showing of manifest injustice. But we find no case—and the parties cite none—in which the State was permitted to set aside lawful sentences previously imposed and to let the defendant's pleas stand on the grounds that it was the court's intention at the sentencing hearing to impose more severe sentences.

*Good Faith and Fair Dealing*

The State argues that Masterson's plea agreement under principles of contract law contains implied covenants of good faith and fair dealing. Thus, Masterson's duty to recommend to the court a total departure sentence of 105 months as set forth in the plea agreement did not end upon his original sentencing but continued and was in force when the district court set aside his sentences and imposed new ones. In other words, to fulfill this contractual duty Masterson would have had to recommend at resentencing that the district court impose new departure sentences, which our analysis shows it no longer had authority to do. On its face we find this contention to be beyond any reasonable

21

application of the contractual covenants of good faith and fair dealing. We do not agree that the duties of good faith and fair dealing require that Masterson urge the district court at his resentencing to perform an act for which the court had no jurisdiction.

*Equitable Estoppel*

The State argued, and the district court found persuasive, that Masterson was equitably estopped from challenging the district court's action in vacating Masterson's sentences and imposing a new 105-month sentence.

The elements of equitable estoppel are set forth in *Steckline Communications, Inc. v. Journal Broadcast Group of Kansas, Inc.*, 305 Kan. 761, Syl. ¶ 3, 388 P.3d 84 (2017):

> "A party asserting equitable estoppel bears the burden of proving that another party, by acts, representations, admissions, or silence when that other party had a duty to speak, induced the party asserting estoppel to believe certain facts existed. The party asserting estoppel must also show that the party reasonably relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts."

Though not concisely stated, it appears that the State's equitable estoppel is based on the concurrence of Masterson's counsel at the original sentencing hearing with the State's proposed sentencing protocol vis-à-vis Masterson's position when the court vacated his sentences and imposed new ones instead.

Equitable estoppel as defined above requires the State, as the party asserting estoppel, to show that Masterson induced the State "to believe certain facts existed" and that the State "reasonably relied and acted upon such belief" to its prejudice. At Masterson's original sentencing, the State advised the court that the legal way to sentence Masterson was to impose individual guideline sentences on each count and, after those

22

sentences were imposed, to apply the departure factors to achieve an upward controlling sentence of 105 months. When asked, Masterson's counsel agreed. The State did not rely on Masterson's agreement with the sentencing procedure because the sentencing procedure was not Masterson's idea, but the State's. (The State apparently had this sentencing procedure in mind as early as Masterson's plea hearing.) After the prosecutor explained the State's proposed sentencing method, the court simply asked Masterson's counsel if she agreed with the procedure described by the State. Masterson's counsel replied, "Yes." The district court asked, "I wouldn't have to do that on each individual crime, then?" Again, Masterson's counsel replied, "Right. Yes." The State was hardly led down the primrose path by Masterson. The State was well along that path before Masterson's counsel said one word. We find no evidence to support the notion that the State had been induced by Masterson to come up with the sentencing protocol it recommended to the court.

Moreover, Masterson's counsel had no duty to educate the State on the proper sentencing procedure. In *Jamerson*, the State argued that the decision in *Guder* leads to an absurd result because "under *Guder* a defendant can game the system and undermine a plea agreement by waiting until after sentencing to object to incorrect criminal history scores." *Jamerson*, 309 Kan. at 214. The Supreme Court rejected the State's argument.

The State's proposed method of imposing departure sentences was improper, and both parties later conceded that fact to the district court. But the State contends that Masterson was equitably estopped from opposing the district court's actions in resentencing him. The State argues, based on *State v. Hargrove*, 48 Kan. App. 2d 522, 548-49, 293 P.3d 787 (2013), that judicial estoppel applies here in order to preserve the essential integrity of the judicial process.

But Masterson did not resist resentencing. He is the one who discovered the sentencing error and brought it to the court's attention when he moved to correct illegal

23

sentence. His opposition came when the district court sought to impose new sentences which it had no jurisdiction to impose. The notion of preserving the essential integrity of the judicial process is not furthered by gagging a defendant to keep him or her from bringing to the court's attention the fact that the court has no authority to take the action the court is about to undertake.

We are persuaded that equitable estoppel does not apply here.

## II. *The Imposition of Lifetime Postrelease Supervision*

For his second issue, Masterson asserts the district court imposed an illegal sentence when it ordered him to receive lifetime postrelease supervision under K.S.A. 2017 Supp. 22-3717(d)(1)(G)(i). He claims the district court violated the holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), because the court engaged in judicial fact-finding when it found Masterson was over the age of 18. Masterson argues the question of his age should have been submitted to a jury, and he did not waive that right. The State argues that the version of K.S.A. 22-3717 in effect when Masterson committed his crimes did not limit lifetime postrelease supervision to only those who were age 18 or older.

*Standard of Review*

We review de novo constitutional challenges under *Apprendi*. *State v. Anthony*, 273 Kan. 726, 727, 45 P.3d 852 (2002). We apply the same review standard to questions of statutory interpretation. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

*Analysis*

24

Masterson raises his challenge under *Apprendi*. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Masterson argues the district court violated *Apprendi* by ordering lifetime postrelease supervision without submitting the question of Masterson's age to the jury.

Masterson relies on the 2017 version of K.S.A. 22-3717, which provides that a person sentenced to imprisonment for a sexually violent crime shall be subject to mandatory lifetime postrelease supervision when the offender is "18 years of age or older." K.S.A. 2017 Supp. 22-3717(d)(1)(G)(i). But, Masterson's crimes were committed in December 2016. At the time of his crimes, K.S.A. 2016 Supp. 22-3717(d)(1)(G) provided as follows:

"Except as provided in subsection (u) [which does not apply], persons convicted of a sexually violent crime committed on or after July 1, 2006, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life."

The fundamental rule of sentencing is that a person convicted of a crime is sentenced in accordance with the sentencing provisions in effect at the time the crime was committed. See *State v. McLinn*, 307 Kan. 307, 337, 409 P.3d 1 (2018). The version of the statute in effect when Masterson committed his crimes contains no age requirement. See K.S.A. 2016 Supp. 22-3717(d)(1)(G).

In his reply brief, Masterson concedes that he cited the incorrect version of the statute and that the 2016 version which contains no age limit applies. But he still argues the State was required to prove his age to a jury before he could be sentenced to lifetime postrelease supervision. He relies on several cases holding that lifetime postrelease

25

supervision violated the prohibition on cruel and unusual punishment of the Eighth Amendment to the United States Constitution.

In *State v. Dull*, 302 Kan. 32, 61, 351 P.3d 641 (2015), the Kansas Supreme Court held mandatory lifetime postrelease supervision is categorically unconstitutional when applied to a juvenile convicted of aggravated indecent liberties with a child under *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). A panel of this court later expanded *Dull*'s prohibition on lifetime postrelease supervision as categorically unconstitutional to all juveniles convicted of a sex offense. *State v. Medina*, 53 Kan. App. 2d 89, 97, 384 P.3d 26 (2016).

Masterson argues that the 2017 amendments to K.S.A. 22-3717(d)(1)(G), which require the offender be 18 or older, "simply brought [the statute] in line with what the Constitution already required."

There was no jury trial in Masterson's case because the case was settled. In his plea agreement, Masterson states: "My date of birth is 04/30/1980." Thus, he was age 36 when he committed his crimes.

The text of K.S.A. 2016 Supp. 22-3717(d)(1)(G) is clear. The text contains no age requirement before lifetime postrelease supervision can be imposed. So a jury need not decide Masterson's age in order for the court to determine that lifetime postrelease supervision should be imposed. While lifetime postrelease supervision cannot be imposed on juveniles under the holdings in *Dull* and *Medina*, there is no issue here whether Masterson was a juvenile at the time he committed his crimes.

To summarize, we conclude that the district court was without jurisdiction to resentence Masterson from 32 months in prison to 53 months on Count I, and from 32 consecutive months in prison to a consecutive 52 months on Count 2. Accordingly, those

sentences are vacated and the case is remanded for the district court to reimpose Masterson's original guideline sentences of 32 months in prison on Count 1 and a consecutive 32 months on Count 2, for a controlling term of 64 months. We find no merit in Masterson's *Apprendi* claim and affirm the district court on that issue.

Affirmed in part, sentences vacated, and  remanded with directions.