No. 75,630

STATE OF KANSAS, *Appellant*, v. JACQUELINE M. MILLER and KENNETH D. DOUGLAS, *Appellees*.

(926 P.2d 652)

Opinion filed October 25, 1996.

*Doyle Baker*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the briefs for appellant.

*Janine Cox*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellee Jacqueline M. Miller.

*John J. Briggs*, assistant public defender, argued the cause, and *William A. Wells*, of Young, Bogle, McCausland, Wells & Clark, P. A., of Wichita, was on the brief for appellee Kenneth D. Douglas.

The opinion of the court was delivered by

McFARLAND, C.J.: In these consolidated appeals, the State, on questions reserved, challenges the district court's jurisdiction to modify sentences lawfully imposed under the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.*, committing defendants to the custody of the Secretary of Corrections.

The two cases involve different procedural facts and will be considered separately. We shall first consider the appeal relative to Kenneth D. Douglas.

## KENNETH D. DOUGLAS

On July 14, 1995, Kenneth D. Douglas, whose crimes were committed on January 14, 1995, pled nolo contendere to two counts of aggravated indecent liberties, K.S.A. 21-3504(a)(3), a level 3 person felony. Having one prior misdemeanor, Douglas' criminal history fell into category I. The presumptive sentence under the KSGA for his primary conviction was 46 to 51 months' imprisonment. On August 9, 1995, Douglas filed a motion for durational and dispositional departure from the presumptive sentence. On September 1, 1995, Douglas appeared for sentencing. After argument on the matter, the district court found no substantial and compelling reasons to depart from the presumptive sentence and sentenced Douglas to two concurrent terms of 46 months' imprisonment.

On September 6, 1995, Douglas filed a motion for reconsideration. Douglas requested reconsideration of his sentence and offered the testimony of Dr. Howard Brodsky, Ph. D., who would assert that Douglas was not a pedophile.

On September 14, 1995, a hearing was held where the district court acknowledged that it had previously rejected Douglas' motion for departure and sentenced him to imprisonment. Judge William Rustin then related the circumstances leading to Douglas' motion to reconsider, stating that after Douglas' sentencing, Douglas' attorney had appeared in the judge's office asking if there was "anything that [he] could have done or should have done to assist Mr. Douglas." Judge Rustin told defense counsel that he "made a fine . . . thorough presentation," and if he wanted to "come back the following week and talk to [him], he could." Judge Rustin went on:

"I've thought about this over the holiday weekend, and I thought maybe under the circumstances I needed to review some things that I possibly had not reviewed totally, by—at the time of sentencing. I know Mr. Douglas told me that he'd had quite a problem with alcohol during the course of his life and had been dry for a certain period of time. Of course, we hear alcohol dependent problems up here quite a bit, just like drug dependent problems up here, and most of the time I'll hear a person say 'I've conquered that problem, I'll be able to conquer it,' and I think this is because they want to avoid any incarceration if they can, and a lot of them do that. But, I got into more of a question in my mind, and I went back over Dr. Brodsky's reports. I think the largest question I had in my mind cropped

up was.the wide range of people that Mr. Douglas had confronted and had some problems with. Not only the children, but, I think, the fellow 24 years of age. I asked Bill if he wanted to pursue this, get ahold of the District Attorney's Office and file a motion, and then get me something from Dr. Brodsky concerning whether or not his client, Mr. Douglas, would be classified as a pedophile."

At the hearing, the State argued that, under the KSGA, the district court had no jurisdiction to change the sentence once it was imposed unless it had imposed an illegal sentence. The State also objected to any new post-sentencing information being considered by the court. Douglas argued that the district court retained jurisdiction until the defendant is actually "submitted to the custody of the Secretary of Corrections." Because that had not happened in this case, Douglas argued that the district court retained jurisdiction to reconsider the sentence imposed. The district court then granted defendant's motion for reconsideration and placed defendant on 5 years' probation. The journal entry states that the court found "that a flexible reading of the Kansas Sentencing Guidelines Act would allow for reconsideration and allow the Court to reconsider and change its prior judgment." The journal entry lists findings the court believed constituted the substantial and compelling reasons justifying the dispositional departure.

The district court found that it had jurisdiction to modify a lawful KSGA sentence of imprisonment. The propriety of that determination is the issue before us.

The State argues that KSGA has eliminated the whole sentence modification process available under the pre-KSGA sentencing scheme. Therefore, the State argues the district court was without jurisdiction to modify its lawful September 1, 1995, sentencing. Douglas does not contend that KSGA authorizes motions to modify. Rather, defendant, argues: (1) under the "unique circumstances" herein, the change in the sentence was not really a modification; (2) the district court has jurisdiction to reconsider departure issues so long as the defendant has not been physically delivered to the custody of the Secretary of Corrections; and (3) the court may reconsider its decision on departure issues so long as the journal entry of the hearing has not been filed prior to the filing of the motion for reconsideration.

This issue concerns the interpretation of the KSGA. Statutory interpretation is a question of law, and the appellate court's scope of review is unlimited. *State v. Riley*, 259 Kan. 774, Syl. ¶ 1, 915 P.2d 774 (1996); *State v. Roderick*, 259 Kan. 107, 110, 911 P.2d 159 (1996).

"When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Martindale v. Tenny*, 250 Kan. 621, Syl. ¶ 2, 829 P.2d 561 (1992). See *State v. Gonzales*, 255 Kan. 243, 249, 874 P.2d 612 (1994).

However, if the statute is ambiguous, the fundamental rule of statutory construction, to which all other rules are subordinate, is that the intent of the legislature governs if that intent can be ascertained. *Gonzales*, 255 Kan. at 248-49. " 'In determining legislative intent, courts are not limited to a mere consideration of the language used, but look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished and the effect the statute may have under the various constructions suggested.' " *Gonzales*, 255 Kan. at 249.

" 'Our criminal statutes are to be construed strictly against the State.' " *State v. JC Sports Bar, Inc.*, 253 Kan. 815, 818, 861 P.2d 1334 (1993).

The statutory pre-KSGA sentence modification process has been continued as to dispositions for crimes committed prior to July 1, 1993, in K.S.A. 21-4603, which provides:

"(d)(1) Except when an appeal is taken and determined adversely to the defendant as provided in subsection (d)(2), at any time within 120 days after a sentence is imposed, after probation or assignment to a community correctional services program has been revoked, the court may modify such sentence, revocation of probation or assignment to a community correctional services program by directing that a less severe penalty be imposed in lieu of that originally adjudged within statutory limits and shall modify such sentence if recommended by the Topeka correctional facility unless the court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the inmate will not be served by such modification.

(2) If an appeal is taken and determined adversely to the defendant, such sentence may be modified within 120 days after the receipt by the clerk of the district court of the mandate from the supreme court or court of appeals.

"(e) The court shall modify the sentence at any time before the expiration thereof when such modification is recommended by the secretary of corrections unless the court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the inmate will not be served by such modification. The court shall have the power to impose a less severe penalty upon the inmate, including the power to reduce the minimum below the statutory limit on the minimum term prescribed for the crime of which the inmate has been convicted. The recommendation of the secretary of corrections, the hearing on the recommendation and the order of modification shall be made in open court. Notice of the recommendation of modification of sentence and the time and place of the hearing thereon shall be given by the inmate, or by the inmate's legal counsel, at least 21 days prior to the hearing to the county or district attorney of the county where the inmate was convicted. After receipt of such notice and at least 14 days prior to the hearing, the county or district attorney shall give notice of the recommendation of modification of sentence and the time and place of the hearing thereon to any victim of the inmate's crime who is alive and whose address is known to the county or district attorney or, if the victim is deceased, to the victim's next of kin if the next of kin's address is known to the county or district attorney. Proof of service of each notice required to be given by this subsection shall be filed with the court."

The comparable statute for crimes committed on or after July 1, 1993, K.S.A. 21-4603d, makes no mention of and does not provide for sentence modification.

Departure from a presumptive KSGA sentence is provided for in K.S.A. 21-4701 *et seq.* The sentencing judge is required to impose the presumptive sentence, unless the judge finds substantial and compelling reasons to depart. K.S.A. 21-4716; K.S.A. 21-4717. Motions to depart may be filed by the State or the defendant. Once such a motion is filed, the district court shall hold a hearing to consider imposition of a departure sentence. K.S.A. 21-4718(a)(1). After the conclusion of the hearing, or within 20 days thereafter, the court shall issue findings of fact and conclusions of law regarding the issues submitted by the parties and shall enter an appropriate order. K.S.A. 21-4718(a)(2). The court may also decide to depart on its own volition by notifying the parties of such intent. K.S.A. 21-4718(b). Whenever the court imposes a sentence that deviates from the presumptive sentence, the court is required to make findings of fact as to the reasons for departure. K.S.A. 21-4718(c).

Although both the State and the defendant may appeal a departure sentence, no provisions are made for modifying a sentence that has already been imposed. That this elimination of the court's authority to modify was intentional is supported by the Kansas Sentencing Guidelines Desk Reference Manual, p. 2 (1993) ("the court will no longer be asked to consider motions to modify sentences within 120 days of their imposition"); by the Legislative Interim Study of the Special Committee on the Judiciary, p. 102 (1993) ("[t]he bill eliminates a judge's ability to sentence people to prison and then call them back after 120 days"); by the Legislative Interim Study of the Criminal Law Advisory Committee, p. 158 (1992) ("major recommendations by the Kansas Sentencing Commission include . . . the repeal of the 120-day call back provision"); and by the Kansas Sentencing Guidelines Act Implementation Manual, p. i-7 (1992) ("statute which allows sentences to be modified within 120 days is repealed").

The Kansas Court of Appeals has determined a similar issue in *State v. Bost*, 21 Kan. App. 2d 560, 903 P.2d 160 (1995).

In *Bost*, the defendant pled nolo contendere to robbery charges. A subsequent PSI report indicated the appropriate criminal history and crime severity level. On March 28, 1994, the defendant was sentenced to the presumptive sentence. *After the sentencing hearing*, Bost filed a motion for modification of sentence and/or downward departure. Following a hearing, the motion was denied and, on July 28, 1994, Bost appealed his sentence.

In dismissing Bost's appeal, the Court of Appeals stated:

*"Effect on jurisdiction of a motion to modify/depart*

"Neither party addressed in their briefs, although requested by this court, whether a motion for departure is timely after the court has rendered sentence or whether a district court has jurisdiction to consider a motion to modify for a crime committed after July 1, 1993. Because these issues are significant and jurisdictional, the court will raise and consider them on its own initiative.

" 'It is the duty of an appellate court to raise the question of jurisdiction on its own motion, and where the district court had no jurisdiction, the appellate court does not acquire jurisdiction over the subject matter on appeal.' *City of Overland Park v. Barron,* 234 Kan. 522, Syl. ¶ 1, 672 P.2d 1100 (1983).

" ' "This court has only such appellate jurisdiction as is provided by law. Jurisdiction to entertain an appeal is conferred by statute pursuant to article 3,

§ 3 of the Constitution of Kansas, and when the record discloses a lack of jurisdiction it is the duty of this court to dismiss the appeal." [Citations omitted.]' *State v. Ortiz*, 230 Kan. at 735.

*"Motion to modify*

"For crimes committed *before* July 1, 1993, the court's authority to modify a defendant's sentence came under K.S.A. 1992 Supp. 21-4603(4)(a). In conjunction with K.S.A. 21-4601, the Kansas courts allowed a defendant, under K.S.A. 1992 Supp. 21-4603(4), the opportunity to have his or her sentence modified when a motion was filed within the statutory 120-day period following the imposition of sentence. *State v. Saft*, 244 Kan. 517, 519, 769 P.2d 675 (1989).

"However, with the implementation of the sentencing guidelines, the legislature established a separate statute to cover authorized dispositions of crimes committed *on or after* July 1, 1993. K.S.A. 1994 Supp. 21-4603d. There are no provisions in K.S.A. 1994 Supp. 21-4603d which grant a defendant the right to file a motion requesting the court to modify his or her sentence. The legislature has revoked the ability to have one's sentence modified after sentencing.

"A sentencing court has the ability to adjust, alter, or change guidelines-computed sentences *prior* to sentencing. Generally, once a defendant's placement on the sentencing guidelines grid has been determined, the defendant can attempt to 'modify' the presumptive sentence by utilizing the nonexclusive list of mitigating factors found in K.S.A. 1994 Supp. 21-4716(b)(1). The State, by the same reasoning, can attempt to 'modify' the presumptive sentence by utilizing the nonexclusive list of aggravating factors found in K.S.A. 1994 Supp. 21-4716(b)(2). The court has the final decision on whether the factors submitted by the defendant or the State are substantial and compelling reasons to impose a departure. K.S.A. 1994 Supp. 21-4716(a). The motion for a departure sentence is the method for sentence modification for crimes committed after July 1, 1993.

"The previous holdings concerning the timing for filing a notice of appeal under K.S.A. 1994 Supp. 22-3608 are consistent with the legislature's elimination of allowing post-sentencing motions to modify. K.S.A. 1994 Supp. 22-3608(c) no longer provides that a motion to modify extends the time to file a notice of appeal, whereas earlier, a defendant had 10 days from the denial of a motion to modify in which to file a notice of appeal. K.S.A. 22-3608(1); see *State v. Ji*, 255 Kan. 101, 103, 872 P.2d 748 (1994). A defendant whose crime was committed on or after July 1, 1993, has only 10 days from sentencing in which to appeal, without any consideration or mention of a motion to modify. K.S.A. 1994 Supp. 22-3608(c).

"The district court was without the authority to entertain Bost's motion to modify his sentence.

*"Downward Departure*

"The KSGA does not expressly state that a motion for departure must be filed prior to sentencing. However, provisions of the KSGA provide that the disposition of a departure sentence must be resolved prior to or at the sentencing hearing.

K.S.A. 1994 Supp. 21-4718(a) provides that if a defendant or the State files a motion to depart, the court shall hold a hearing to consider a departure sentence. Additionally, the hearing shall be scheduled so that both parties have adequate time to prepare to argue for or against departure, and the court must issue findings of fact and conclusions of law concerning the departure within 20 days of the hearing. K.S.A. 1994 Supp. 21-4718(a)(1) and (2).

"K.S.A. 1994 Supp. 21-4716(a) expressly determines the timing of a motion for a departure sentence. It states in part: 'If the sentencing judge departs from the presumptive sentence, the judge shall state on the record *at the time of sentencing* the substantial and compelling reasons for the departure.' (Emphasis added.) There is no authority for a sentencing court to entertain a motion for departure from the presumptive sentence after sentence is imposed.

"The district court was without the authority to entertain Bost's request for a downward departure." (Emphasis in original.) 21 Kan. App. 2d at 564-66.

Appeals of departure sentences and post-sentencing matters are addressed in K.S.A. 21-4721. A departure sentence is subject to appeal. K.S.A. 21-4721(a). An appellate court may not review a sentence that is within the presumptive sentence for the crime or any sentence resulting from an agreement between the State and the defendant which the sentencing court approves on the record. K.S.A. 21-4721(c). On appeal, the review of a departure sentence is limited to whether the sentencing court's findings of fact and reasons justifying a departure are supported by the evidence in the record and whether these findings constitute substantial and compelling reasons for departure. K.S.A. 21-4721(d). Further, in any appeal, the appellate court may review a claim that the departure sentence resulted from partiality, prejudice, oppression, or corrupt motive, or that there was an error in computing criminal history or crime severity level. K.S.A. 21-4721(e). Finally, "[t]he sentencing court shall retain authority irrespective of any notice of appeal for 90 days after entry of judgment of conviction to modify its judgment and sentence *to correct any arithmetic or clerical errors.*" (Emphasis added.) K.S.A. 21-4721(i).

Douglas relies on several additional statutes to support his position. Douglas contends that K.S.A. 1995 Supp. 75-5218 and K.S.A. 21-4718 imply that the sentencing court has continuing jurisdiction between the time sentence is pronounced and the time the order on the departure motion is issued. Because the motion

to reconsider was filed within that time, the subsequent decision to depart was proper.

K.S.A. 21-4718(a)(2) states: "At the conclusion of the [departure] hearing or within 20 days thereafter, the court shall issue findings of fact and conclusions of law regarding the issues submitted by the parties, and shall enter an appropriate order." K.S.A. 1995 Supp. 75-5218(a) states: "When any person is sentenced to the custody of the secretary of corrections . . . ., the clerk of the court which imposed such sentence shall within three days following the order of the commitment to the secretary notify the secretary of corrections." This statute has not been amended since the KSGA was enacted.

Despite defendant's arguments to the contrary, nothing in these statutes affords a district court continuing jurisdiction after a sentencing proceeding is concluded. Additionally, in a criminal case, the court's judgment and sentence do not derive their effectiveness from the journal entry or from any act of the clerk; they are effective when pronounced. *State v. Royse*, 252 Kan. 394, 397, 845 P.2d 44 (1993).

We agree with the Court of Appeals analysis in *State v. Bost*, 21 Kan. App. 2d 560. When a lawful sentence has been imposed under KSGA, the sentencing court has no jurisdiction to modify that sentence except to correct "arithmetic or clerical errors" pursuant to K.S.A. 21-4721(i). Likewise, there is no jurisdiction for a sentencing court to consider or reconsider possible sentence departure from the presumptive sentence after the sentence has been imposed and the sentencing proceeding has been concluded. Defendant's contention that the sentencing court has jurisdiction to modify until the defendant is in the actual physical custody of the Secretary of Corrections has no statutory support and is inconsistent with the elimination of the court's statutory power of sentence modification.

We conclude the district court's modified sentence of September 14, 1995, and findings relative to departure are void for lack of jurisdiction and must be reversed. The case is remanded to the district court to reinstate its original sentence of September 1, 1995.

## JACQUELINE M. MILLER

Jacqueline M. Miller, whose crime was committed on November 13, 1993, pled guilty to one count of forgery, K.S.A. 21-3710(a)(2), a level 8 nonperson felony. With a criminal history in category I, Miller's sentence was presumptive nonprison. On May 12, 1994, Miller was sentenced to 7 months' imprisonment and placed on probation for 24 months, pursuant to the sentencing procedures in K.S.A. 21-4704(e)(3).

On May 10, 1995, Miller, before the district court for a probation violation hearing, stipulated to the alleged violations. The court revoked Miller's probation and immediately reinstated it under slightly modified conditions, moving her from one treatment facility to another.

On July 24, 1995, a warrant was again filed by the State, alleging Miller violated the conditions of her probation. On August 3, 1995, at a hearing on the matter, Miller stipulated to the probation violations and Judge Dan Brooks revoked her probation, *committing Miller to the custody of the Secretary of Corrections for serving her 7-month term of imprisonment*, and concluded the proceeding. The journal entry of Miller's probation revocation was filed August 10, 1995. On August 9, 1995, Miller filed a motion for rehearing, seeking an order reinstating Miller's probation.

On September 1, 1995, a hearing was held on this motion. The State objected to the hearing on jurisdictional grounds, arguing that the district court was, in effect, modifying Miller's sentence and that there was no provision in the KSGA for modification. Rejecting the State's arguments, the district court noted that it had received "new information in the form of mental health things" that it believed were "significant enough to have [Miller's attorney] file a motion [for rehearing]." It was because of this new information that the district court canceled its August 3 order and reinstated Miller's probation.

Miller's probation was again revoked on February 22, 1996, after the commencement of this appeal. She was sentenced to the custody of the Secretary of Corrections to serve the 7-month sentence. Based upon the amount of credit given on the sentence and state-

ments made at oral argument, it would appear Ms. Miller has served her time and has been discharged.

The State argues that when the court revoked Miller's probation and sentenced her to the custody of the Secretary of Corrections, the court had no jurisdiction to modify the commitment under KSGA. The basis for the argument is the same asserted in the Douglas case.

Miller argues this was strictly a probation matter. She asserts that the KSGA has not changed the purpose and function of probation. Absent specific statutory changes to the statutes relative to probation, Miller argues that there is no indication that the legislature intended to remove the district court's discretionary powers concerning probation. Therefore, Miller concludes, the district court continues to have jurisdiction over probation proceedings and may revoke, reinstate, or reconsider probation decisions.

She argues the State did not object when her probation was revoked in May 1995 and immediately reinstated and should not be permitted to complain when the same thing occurred in August 1995. This argument points out, however, the differences between the two proceedings. The journal entry on the May proceeding reflects the following occurred:

"2.4 That on the 6th day of March, 1995, a warrant alleging the defendant violated the conditions of probation was filed.

"2.5 That the defendant stipulates to violating conditions of probation as follows: Explain: *As charged in the warrant.*

"2.6 *That the Court does hereby revoke the defendant's probation and reinstates the probation under the same conditions with the following modified conditions:*
    Remain in Women's Recovery Services until placement at Miracle House halfway house is available, then reside there and follow all rules and regulations.
    [2.7 omitted in the original.]

"2.8 Other: If Women's Recovery Services can no longer keep defendant, she may live with stepmother." (Emphasis supplied.)

The journal entry relative to the August 3, 1995, proceeding states the following occurred:

"2.4 That on the 24th day of July, 1995, a warrant alleging the defendant violated the conditions of probation was filed.

"2.5 That the defendant stipulates to violating conditions of probation as follows: Explain: Defendant admits violations as alleged in the warrant.

"2.6 *That the Court does hereby revoke the defendant's probation and orders that the defendant be committed to the Secretary of Corrections to begin serving the original sentence(s) imposed on the 12th day of May, 1994.* For purposes of computing time as provided in K.S.A. 21-4614, the sentence(s) as imposed shall be considered to have begun on the 8th day of May, 1995, giving the defendant credit for 87 day(s) spent incarcerated.

"2.7 It is hereby the order of the Court that the Sheriff or a designee transport the defendant to the custody of the Secretary of Corrections.

"2.8 Other: The sentence imposed in this case shall run concurrently with Case Nos. 93TR13664 and 95TR1359." (Emphasis supplied.)

The May 1995 hearing was, throughout, a probation proceeding. Miller's probation ended by revocation on August 3, 1995, and she was *committed* to the custody of the Secretary of Corrections. The question then becomes, as in Douglas' case, whether the sentencing court had jurisdiction to modify a lawful KSGA sentence committing Miller to the custody of the Secretary of Corrections.

The district court could, on August 3, 1995, have revoked and reinstated probation. The district court could, on August 3, 1995, have taken the matter under advisement if it felt additional information was needed. It did not choose to do so. It revoked probation, committed Miller to the custody of the Secretary of Corrections, and concluded the proceedings.

We have previously held in the Douglas appeal herein that where a sentencing court imposes a lawful KSGA sentence committing a defendant to the custody of the Secretary of Corrections, the court has no jurisdiction to modify the sentence. There is no statutory authority supporting the proposition that a different result should be reached if the defendant so committed had been revoked from probation prior to being committed. We find no merit in Miller's arguments.

The district court lacked jurisdiction to reinstate Miller's probation on September 1, 1995, after committing her to the custody of the Secretary of Corrections on August 3, 1995. Inasmuch as Miller has served her sentence by virtue of a subsequent revocation proceeding, there is no reason to remand the case.

## CONCLUSION

### STATE v. DOUGLAS

The State's appeal is sustained, the district court's modified sentence of September 14, 1995, is vacated, and the case is remanded for reinstatement of the original September 1, 1995, sentence.

### STATE v. MILLER

The State's appeal is sustained; the district court's September 1, 1995, modification of sentence was erroneous, but the matter is now moot and no remand is necessary.