NOT DESIGNATED FOR PUBLICATION

No. 121,779

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KIRK E. ALLEN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Opinion filed January 15, 2021. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL and ATCHESON, JJ.

PER CURIAM: Defendant Kirk E. Allen admitted to violating the terms of his probation and later thought better of his decision when the Sedgwick County District Court ordered him to serve his 52-month prison sentence. Allen filed a motion to withdraw his admissions. The district court declined to consider the motion, and Allen has appealed. Allen contends he has a constitutional due process right to withdraw his admissions or, alternatively, this court should create a common-law right for him to do so. Absent a statute allowing a probationer to withdraw admissions to violations—and there is no such statute in Kansas—defendants in Allen's position cannot lay claim to

1

such relief in their criminal cases. We, therefore, find no legal basis for disturbing the district court's order revoking Allen's probation and sending him to prison.

FACTUAL AND PROCEDURAL HISTORY

Under an agreement with the State, Allen pleaded no contest in 2015 to an amended charge of commercial sexual exploitation of a child, a felony violation of K.S.A. 2013 Supp. 21-6422. The factual circumstances of the crime are irrelevant to the issue before us. Consistent with the agreement, the district court later sentenced Allen to 52 months in prison. In the plea agreement, Allen reserved the right to request probation; the district court granted his request, placing him on probation for 36 months.

The State filed a warrant in August 2017 alleging Allen violated the conditions of his probation by possessing a handgun and by "associating with" persons attempting to purchase cocaine. Allen was taken into custody on the warrant and appeared with his lawyer at a probation revocation hearing on November 9, 2017.

At that hearing, Allen's retained lawyer informed the district court that Allen did not intend to contest the violations. The district court advised Allen that he had a right to an evidentiary hearing at which the State would have to prove the violations by a preponderance of the evidence and that his lawyer could cross-examine the State's witnesses and present witnesses and other evidence on Allen's behalf. Allen acknowledged he was waiving those rights by not contesting the allegations in the warrant. The district court then recited each violation in the warrant and asked Allen personally if he admitted the violation for purposes of the probation revocation proceeding. Allen stated that he did. The district court found that Allen "knowingly and voluntarily waived his right to a hearing" and accepted his admission that the probation violations in the warrant were true. The district court continued the hearing, allowing the State and Allen to later address an appropriate sanction for the probation violations.

2

Allen again appeared with his lawyer on December 1, 2017, when the district court took up what to do with Allen. The State recommended that Allen serve the underlying prison sentence. Allen and his lawyer made a lengthy presentation for an intermediate jail sanction with reinstatement of probation. Allen personally pointed to his gainful employment and his financial and direct parental support for his children in asking for another opportunity on probation. Based on Allen's underlying crime of conviction and the nature of the admitted violations, the district court revoked Allen's probation and ordered that he serve the 52-month prison sentence.

Two weeks later, a newly retained lawyer filed a motion on Allen's behalf to withdraw his admissions to the probation violations alleged in the warrant. The case was continued several times as Allen changed lawyers, and the district court finally appointed a public defender to represent him. In August 2019, the district court heard argument on Allen's motion to withdraw his admissions to the probation violations. The district court concluded it had "no jurisdiction" to consider the motion because Allen had no legal right to relief. The district court denied the motion on that basis and expressly declined to rule on Allen's argument that his admissions were not knowingly and voluntarily made. Allen has appealed.

LEGAL ANALYSIS

The single issue on appeal is the propriety of the district court's failure to grant Allen relief on the motion to withdraw his admissions to the probation violations. Allen has not otherwise challenged the revocation of his probation and the order requiring him to serve the underlying prison sentence. There are no disputed facts bearing on this point, so we address a question of law. And we owe no particular deference to the district court's answer to that question. See *State v. Bennett*, 51 Kan. App. 2d 356, 361, 347 P.3d 229 (2015); *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 258-59, 261 P.3d

3

943 (2011). We begin there, recognizing we may affirm the district court if it reaches what is functionally the right result for the wrong reason. *State v. Smith*, 309 Kan. 977, 986, 441 P.3d 1041 (2019).

*Jurisdiction to Hear Allen's Motion*

The district court incorrectly reasoned that it lacked jurisdiction to consider Allen's motion because it saw no plausible legal basis for granting relief. As we explain, Allen had no right to withdraw his admissions to the probation violations in this case. But the district court had jurisdiction—the broad legal authority—to consider the motion and to deny it as lacking any legal basis. District courts have general jurisdiction encompassing criminal prosecutions and the constituent components of those prosecutions, including granting and revoking probation. The district court had jurisdiction over this case and, therefore, had the authority to decide Allen's motion. The district court's authority did not vanish because Allen requested relief he could not receive in a probation revocation. The district court improperly premised its ruling on a lack of jurisdiction, blurring the very real difference between a meritless request for relief and one outside the court's authority to consider at all.

In a criminal case, the district court typically loses jurisdiction when a party (commonly the defendant) dockets an appeal. Jurisdiction effectively shifts to the appellate court hearing the appeal. Allen did not docket his appeal until after the district court denied his motion to withdraw his admissions. The parties have not suggested some other jurisdictional bar would have precluded the district court from deciding the motion on the merits. Although we have not shined a bright light in every nook and cranny, we see no readily apparent jurisdictional bar. See *State v. Marinelli*, 307 Kan. 768, Syl. ¶ 1, 415 P.3d 405 (2018) (appellate court has obligation to question jurisdiction even when parties have not).

Our concurring colleague, however, offers an entirely different take on jurisdiction—one not advanced by the district court or the State—and would dismiss Allen's appeal for that reason. Although all of us agree Allen gets no relief, Chief Judge Arnold-Burger reads too much into *State v. Miller*, 260 Kan. 892, 902-04, 926 P.2d 652 (1996), *abrogated on other grounds by State v. Berreth,* 294 Kan. 98, 273 P.3d 752 (2012), in finding a jurisdictional bar to Allen's claims. In *Miller*, the court held that after a district court has revoked a defendant's probation and ordered him or her to serve a prison sentence, it lacks the authority (or jurisdiction) to go back and reinstate the probation, presumably as a reconsidered act of leniency. But the court held no more than that. 260 Kan. at 903 ("The district court lacked jurisdiction to reinstate Miller's probation . . . after committing her to the custody of the Secretary of Corrections."). In a companion case consolidated in that appeal, the court similarly held that once a district court imposes a lawful guidelines sentence, it lacks the authority to later modify the sentence. 260 Kan. at 903.

But Allen has not sought a district court order reinstating his probation. He has asked to withdraw his admissions to the violations—relief that would restore the revocation process to its initial stage. The State then would be required to prove the violations. Assuming the State did, the district court could again send Allen to prison, although in theory it presumably could reinstate probation. If the State failed to prove the violationsd, the warrant should be dismissed, leaving Allen's original probation intact. All of that is materially different from a defendant's motion asking a district court to reconsider its decision to revoke. Because of those procedural and substantive variations, we do not see *Miller* as controlling authority mandating dismissal for lack of jurisdiction. The additional cases Chief Judge Arnold-Burger cites simply restate one or the other of *Miller*'s holdings that a district court lacks jurisdiction to modify a sentence after it has been pronounced or to reconsider a decision to revoke probation. So they do not advance some broader argument for lack of jurisdiction here.

In the district court, Allen relied, in large part, on the statute permitting a defendant to withdraw guilty or no contest pleas to support his motion. See K.S.A. 2019 Supp. 22-3210(d). But K.S.A. 2019 Supp. 22-3210(d) is confined to the disposition of the criminal charges themselves and does not encompass probation revocation proceedings. Allen, therefore, cannot successfully rest his motion on K.S.A. 2019 Supp. 22-3210(d) as direct statutory authority permitting him to withdraw his admissions to the alleged probation violations. The argument impermissibly adds something plainly not found in the statute. Courts cannot manipulate statutes that way. See *State v. Gracey*, 288 Kan. 252, 257, 200 P.3d 1275 (2009); *Green v. General Motors Corp.*, 56 Kan. App. 2d 732, 735, 437 P.3d 94 (2019) ("Judicial interpretation should avoid adding something to the statutory language or negating something already there.").

Likewise, K.S.A. 2019 Supp. 22-3210(d) does not offer some persuasive authority for inferring a comparable right in probation revocation hearings. The Legislature has adopted detailed procedures governing the district court's revocation of probation; and allowing a probationer to withdraw admissions of alleged violations is conspicuously missing. See K.S.A. 2019 Supp. 22-3716(a), (b). The Legislature could have provided such a right but has not done so. We should not augment the statutory scheme simply because we might think it a good idea to allow probationers to withdraw their admissions. See *State v. Spencer Gifts, LLC*, 304 Kan. 755, Syl. ¶ 4, 374 P.3d 680 (2016) ("Questions of public policy are for legislative and not judicial determination, and where the legislature declares a policy, and there is no constitutional impediment, the question of the wisdom, justice, or expediency of the legislation is for that body and not for the courts.").

In the district court, Allen also argued that a defendant admitting a probation violation must do so knowingly and voluntarily. He did not tie such a requirement to a

particular statutory or constitutional right. But Allen submitted he was entitled to an evidentiary hearing on his motion to show that he had not made knowing and voluntary admissions and, therefore, should be allowed to withdraw them.

On appeal, Allen has moved away from his statutory arguments and advances only a constitutional due process right as the legal foundation for the motion to withdraw his admissions. He cites the Due Process Clause of the Fourteenth Amendment to the United States Constitution and sections 1 and 18 of the Kansas Constitution Bill of Rights as the sources of his asserted constitutional right. We consider those arguments, although they were not formally or precisely presented to the district court. See *State v. Patterson*, 311 Kan. 59, 62, 455 P.3d 792 (2020).

Allen suggests he has due process rights under § 18 that are coextensive with his Fourteenth Amendment Due Process rights. Given that suggestion, we simply assume without deciding that defendants are afforded procedural due process protections in criminal actions through § 18 that match their federal due process rights. See *Hodes & Nauser, MDs v. Schmidt*, 309 Kan. 610, 627, 440 P.3d 461 (2019) (recognizing § 18 as "a due process provision"); *State v. Boysaw*, 309 Kan. 526, 537-38, 439 P.3d 909 (2019) (noting § 18 historically construed to afford same protections as federal constitution). But § 18 has generally been viewed as preserving common-law rights to redress for personal injuries and property damage through the judicial process. See *Kansas Medical Malpractice Victims Coalition v. Bell*, 243 Kan. 333, 346-47, 757 P.2d 251 (1988).

Allen submits that under § 1, as construed in *Hodes & Nauser*, he has due process rights that may exceed those guaranteed in the Fourteenth Amendment. He neither identifies those additional protections nor develops a legal argument for their existence. His position is not self-evident from *Hodes & Nauser*. Section 1 constitutionalizes what are described as natural rights. When the Kansas Constitution was adopted in 1859, the framers sought to ban slavery—one human being's ownership of another human being as

chattel—as irreconcilable with natural rights of life, liberty, and the pursuit of happiness identified in § 1. See Kan. Const. Bill of Rights § 6 (banning slavery).

But § 1 is not confined to slavery. The natural rights protected in § 1 encompass "personal autonomy" and "self-determination" and, as such, are "broader than and distinct from" the rights in the Fourteenth Amendment. *Hodes & Nauser*, 309 Kan. 610, Syl. ¶¶ 6 and 8. The appellate courts, however, have sometimes characterized § 1 and § 2 of the Kansas Constitution Bill of Rights as analogous to the Equal Protection and Due Process Clauses of the Fourteenth Amendment. 309 Kan. at 620. Based on Allen's limited argument, we are unpersuaded § 1 embodies an otherwise undefined set of procedural protections reaching quotidian aspects of criminal prosecutions, such as probation revocations. Assuming without deciding that § 1 does have a due process component, we consider it coextensive with the procedural due process protections of the Fourteenth Amendment.

In short, the issue for our consideration turns on the procedural due process protections afforded probationers under the Fourteenth Amendment—protections consistent with any that might be found in sections 1 and 18 of the Kansas Constitution Bill of Rights.

*Due Process Rights of Probationers*

Convicted criminal defendants have no particular constitutional right to probation. And the State may preclude probation for certain crimes. See, e.g., *Harmelin v. Michigan*, 501 U.S. 957, 994-96, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (upholding mandatory sentence of life in prison for drug conviction). Nonetheless, when probation is available as a sentencing option, certain constitutional safeguards attach. So a district court cannot grant or withhold probation based on a defendant's protected class characteristics such as race or religion. See *United States v. Leung*, 40 F.3d 577, 586 (2d Cir. 1994). (That's an

8

equal protection right rather than a matter of due process.) Likewise, probationers are entitled to fair notice of the terms and conditions they must abide while on probation. *State v. Mireles*, No. 102,997, 2011 WL 135027, at *4 (Kan. App. 2011) (unpublished opinion). Allen's claim does not call into question those principles governing placement of a defendant on probation.

More to the point, a felony probationer has a constitutionally protected liberty interest in his or her probation once granted and is, therefore, entitled to procedural due process protections before being revoked. We recently outlined those rights:

> "Probationers facing revocation and imprisonment on felony convictions indisputably have a liberty interest triggering constitutional due process protections. *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973); *State v. Hall*, 287 Kan. 139, 143, 195 P.3d 220 (2008). Because they already have been convicted of crimes and confront the loss of a sentencing disposition that spared them incarceration, probationers are not entitled to the same due process protections as defendants with impending trials to determine their guilt or innocence. 411 U.S. at 781. The *Gagnon* Court drew heavily from *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), in which it considered the due process requirements for resolving disputed parole violations. In *Gagnon*, the Court identified the constitutionally necessary components of due process in a probation revocation proceeding, borrowing directly from *Morrissey*: (1) written notice of the alleged violations prompting the government's request to revoke; (2) disclosure of the evidence upon which the government will rely; (3) the right to be heard in person and to present witnesses and other evidence to refute the grounds for revocation; (4) the opportunity to confront and cross-examine adverse witnesses absent 'good cause' to limit or suspend that examination; (5) a neutral hearing officer and decisionmaker; and (6) a written statement from the fact-finder as to the evidence relied upon and the reasons for revoking probation. 411 U.S. at 786." *State v. Gonzalez*, 57 Kan. App. 2d 618, 623-24, 457 P.3d 938 (2019).

In addition, a probationer may be entitled to legal representation in a revocation proceeding as a constitutional due process right depending on the circumstances of the

9

case. 57 Kan. App. 2d at 624. A probationer has a statutory right to appear with a lawyer as guaranteed in K.S.A. 2019 Supp. 22-3716(b)(2), and the district court must appoint a lawyer for a probationer unable to afford one. The statute also substantially codifies the due process rights recognized in *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973), and outlined in *Gonzalez*, 57 Kan. App. 2d at 623-24.

More broadly, procedural due process protections are calibrated to the nature of the liberty interest or property right at stake—the more important the interest or right the greater the constitutionally required procedures aimed at averting a wrongful deprivation. See *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (The Due Process Clause "at a minimum" requires that "deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."). Accordingly, as the *Gonzalez* court pointed out, "Constitutional due process is an especially elastic concept." 57 Kan. App. 2d 618, Syl. ¶ 2.

Pertinent here, probationers are not entitled to the same high degree of procedural due process as criminal defendants facing trial on felony charges. And the due process rights identified in *Gagnon* and K.S.A. 2019 Supp. 22-3716(b)(2) are geared toward hearings to adjudicate the probationers' alleged violations of the terms and conditions of their probations. Individuals may waive their constitutional rights, including those guaranteed in the Due Process Clause, if they do so knowingly and voluntarily. See *Boykin v. Alabama*, 395 U.S. 238, 242-43, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State v. Beaman*, 295 Kan. 853, 858, 286 P.3d 876 (2012) (right to jury trial); *State v. Jones*, 290 Kan. 373, 376, 228 P.3d 394 (2010) (right to counsel). Probationers are no exception.

*Allen's Due Process Claim Considered*

After the district court declined to reinstate Allen's probation, Allen asserted that his lawyer did not adequately explain the implications of waiving his right to a hearing on the alleged violations and failed to investigate the facts surrounding the allegations. Allen made those assertions in an entirely conclusory fashion in a two-page motion to withdraw his admissions to the violations. We now must determine whether probationers have a constitutional due process right to withdraw their admissions to violations by motion and hearing after a district court has revoked their probation.

We are unpersuaded the process due probationers under the Fourteenth Amendment encompasses such a right. We come to that conclusion in no small part because probationers already have habeas corpus protections against constitutionally deficient legal representation affording similar relief with less chance for abuse.

Allen's motion and its assertions illustrate the risks for misuse of such a procedural mechanism. Without explanation or detail, Allen claimed his lawyer inadequately informed him of the consequences of waiving a hearing on the probation violations and agreeing to those violations. To resolve the claim, the district court would have had to hold an evidentiary hearing at which Allen would be represented by his new lawyer. (The district court would have had to appoint a lawyer for Allen if he could not afford to hire one.) Allen, through his new lawyer, presumably would call his previous lawyer as a witness to show the inadequacy of his legal representation. Allen might call other witnesses and likely would testify himself. As we have said, if he were successful on his motion, Allen would be allowed to withdraw his admissions to the underlying probation revocations. The revocation process would simply be rewound to its initial stage. Without Allen's waiver, the State would then have to prove the alleged probation violations by a preponderance of the evidence.

11

Expedience in many, if not most, cases would likely prompt the State to concede the motion to withdraw regardless of its merits because proving the probation violations themselves typically would be faster and simpler than battling over the quality of the probationer's legal representation. If motions to withdraw admissions were allowed, we would expect in the long run to see probationers routinely filing them whenever district courts revoked their probation. The savvy defendant would initially waive a hearing on the alleged violations in hopes of getting his or her probation reinstated with a modest sanction. Should that plan go awry, the defendant would then draft and file a vague motion attacking the sufficiency of his or her legal representation simply as a coercive device to get the revocation hearing he or she had previously relinquished. Those motions commonly would be more procedural bludgeons than genuine error-correcting tools. Constitutional due process rights should not function that way.

Here, Allen claimed in his motion that he did not understand the legal implications of waiving a hearing on the probation violations and then admitting to them. We find that to be improbable in this case and across the board. Probationers understand they are supposed to comply with the terms and conditions of their probation and there will be adverse consequences if they do not. And they ought to understand those consequences could include having to serve their prison sentences.

When Allen appeared with his lawyer and waived his right to a hearing on the alleged violations, the district court did outline the components of such a hearing, including cross-examining the State's witnesses and presenting countering evidence, that Allen gave up with his waiver. The district court, however, did not explicitly tell Allen it would then determine an appropriate disposition considering the admitted violations and those outcomes might range from continuing his probation with a short jail stay to extending his probation or revoking his probation and sending him to prison to serve his sentence. Such an explanation would have mitigated or obviated any purported deficiency

12

in the lawyer's discussion with Allen about the legal effect of waiving a hearing on the violations.

But we doubt Allen was truly confused about the district court's latitude in addressing the probation violations once they had been proved or admitted. When the district court sentenced Allen, it admonished him, "[I]f you don't do the things you need to do on probation[,] there's a very good chance you are going to get revoked and sent to prison." Allen assured the district court he understood the predicament he faced on probation. The exchange took place more than two years before the revocation proceedings and, thus, lacked recency. But Allen had been exposed to the idea that a probation violation, whether proved or admitted, could land him in prison. We expect probationers generally grasp that commonsensical causal connection between probation violations and imprisonment. In turn, we fail to see the constitutional necessity for motions to withdraw admissions to probation violations to augment what is otherwise obvious from the nature of probation as a conditional reprieve from serving a prison sentence.

More particularly, Allen made a lengthy personal appeal to the district court at the reconvened probation revocation hearing on disposition. He recounted what he saw as his positive conduct demonstrating rehabilitation and a law-abiding character. On that basis, Allen asked the district court to reinstate his probation. The request came on the heels of the prosecutor's recommendation that Allen serve his underlying sentence and his own lawyer's response that a range of sanctions short of imprisoning Allen for roughly 50 months would be more appropriate. The relevant point here lies not in the dueling arguments about disposition but in Allen's obvious understanding that he faced going to prison. In his remarks, he voiced neither surprise the prosecutor and his lawyer were debating that proposition nor objection because his lawyer had led him to believe prison was not a possibility.

13

Allen, of course, premised his motion to withdraw on inadequate legal representation. So if motions to withdraw were constitutionally mandated, we suppose probationers would have to establish that their lawyers' work fell below the standard for adequate legal representation under the Sixth Amendment to the United States Constitution. The Kansas Supreme Court has recognized that standard governs a criminal defendant's postsentencing motion to withdraw a guilty or no contest plea. See *State v. Bricker*, 292 Kan. 239, 245, 252 P.3d 118 (2011); *State v. Louis*, 59 Kan. App. 2d 14, 21, 476 P.3d 837 (2020). There is no principled reason why a more relaxed standard ought to govern a motion to withdraw an admission to a probation violation.

Similarly, we suppose such motions might be required to set forth with particularity the purported facts demonstrating inadequate legal representation or some other compelling basis for relief, rendering a bare-bones submission such as Allen's facially insufficient. Again, we draw on the Kansas Supreme Court's treatment of motions to withdraw guilty or no contest pleas. The court has recognized that a district court may deny a defendant's postsentencing motion to withdraw a plea without a hearing when it fails to allege with particularity sufficient facts that, if proved, would warrant relief. *State v. Adams*, 311 Kan. 569, 574, 465 P.3d 176 (2020); *State v. Moses*, 296 Kan. 1126, Syl. ¶ 1, 297 P.3d 1174 (2013); *State v. Jackson*, 255 Kan. 455, 459, 874 P.2d 1138 (1994). Probationers could not lay claim to more favorable treatment for motions to withdraw their admissions to violations. The *Jackson* court analogized the procedural requirements for a motion to withdraw a plea to those for a habeas corpus motion under K.S.A. 60-1507. 255 Kan. at 459. The court has since affirmed that analogy. See *State v. Laughlin*, 310 Kan. 119, 122-23, 444 P.3d 910 (2019).

With those observations, we circle back to what we see as an avenue for relief for Allen and similarly situated probationers. Because probationers have both a case-specific constitutional right and an absolute statutory right to legal representation in revocation proceedings, they have a concomitant due process right to effective assistance from their

14

lawyers. *State v. Galaviz*, 296 Kan. 168, 177, 291 P.3d 62 (2012) (probation revocation proceedings); cf. *Mundy v. State*, 307 Kan. 280, 295, 408 P.3d 965 (2018) (statutory right to counsel includes effective representation); *Robertson v. State*, 288 Kan. 217, 228, 201 P.3d 691 (2009) (same). Probationers who believe they have been aggrieved by constitutionally deficient legal representation in probation proceedings may seek habeas corpus relief under K.S.A. 60-1507.

To prevail on a 60-1507 motion, a probationer would have to show both inadequate representation and prejudice consistent with *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The grounds for relief in a 60-1507 motion must be stated with particularity identifying the purported deficiencies, the resulting prejudice, and supporting witnesses and other evidence. A district court may summarily deny a 60-1507 motion (without appointing a lawyer or holding a hearing) if the content of the motion and the record in the criminal case demonstrate the movant is not entitled to relief. When a properly drafted motion supports an ineffectiveness claim, the district court should appoint a lawyer and conduct a hearing. Those procedural requirements curtail the burden otherwise meritless motions impose on prosecutors and district courts. By requiring probationers to seek relief under K.S.A. 60-1507, we head off the purely coercive impact of conclusory motions to withdraw admissions of the type Allen filed. At the same time, however, K.S.A. 60-1507 affords a means for truly aggrieved probationers to obtain relief because they have been ill served by their lawyers. Habeas corpus proceedings provide the requisite level of constitutional due process.

Allen was not entitled to relief on his motion to withdraw his admissions to the alleged probation violations. The district court, therefore, committed no reversible error in denying him relief.

Affirmed.

15

* * *

ARNOLD-BURGER, C.J., concurring: Although I agree with the majority that this case does not warrant reversal, I differ in the reason. I believe the district court was correct, it lacked jurisdiction to hear Allen's motion to withdraw admission of probation violations, filed 14 days after the district court revoked his probation. And because it lacked jurisdiction, so do we.

Allen's crime of conviction occurred in May 2014. In July 2015, following a plea of guilty, the district court sentenced Allen to 52 months in prison for commercial sexual exploitation of a child, a severity level 5 person felony. He was granted a dispositional departure to probation for 36 months. Two years later, in August 2017, the court issued a probation violation warrant for Allen's arrest alleging that he committed a new crime—criminal possession of a firearm by a convicted felon; that he associated with persons who were attempting to purchase cocaine; and that he was in possession of a 9mm firearm—all in violation of his probation. On November 9, 2017, Allen—present with retained counsel—admitted to the allegations in the motion. The district court judge explained his rights. She advised him that he had the right to a hearing and that the State would have to prove the allegations against him. She told him he would have the right to call witnesses—including issuing subpoenas for witnesses to appear, if necessary, and he could cross-examine witnesses called by the State. She also explained that he was under no obligation to testify at the hearing. Allen said he understood those rights and wished to wave them, and he wanted to admit to the allegations on the warrant. At the disposition hearing, on December 1, 2017, Allen and his attorney presented letters to the court from his mother and from his long-time girlfriend and Allen gave long and compelling remarks on his own behalf.

16

I agree with the majority that Allen knew he could face 52 months in prison if the court did not grant him some sort of intermediate sanction or reinstatement of probation. During the disposition hearing he pleaded with the judge not to send him to prison, so he knew that was an option. Ultimately, Allen's remarks did not sway the judge and, citing the new crime, involving the possession of a weapon, the dispositional departure, and public safety, ordered Allen remanded to custody for the balance of his term. Allen is not claiming in this appeal that the judge abused her discretion in sending him to prison.

Two weeks later, Allen, through a new retained attorney, moved to withdraw his admissions to the probation violations. In it, he specifically stated that he was not asking for a modification of his sentence or reconsideration of the revocation order. And he did not file an appeal of the revocation order. The district court dismissed his motion on August 12, 2019, based upon lack of jurisdiction and Allen filed this notice of appeal on August 12, 2019. So the issue of whether the violations alleged justify revocation of his probation is not before this court.

Instead, Allen has rested his claim solely under the authority of K.S.A. 2019 Supp. 22-3210 and a claim that his attorney did not properly advise him of the consequences of stipulating to the violations of probation. Applying this statute in this case would mean that Allen could file this motion, the court could consider it, and he would have filed it timely. See K.S.A. 2019 Supp. 22-3210(e)(1) (allowing a defendant one year to file a motion to withdraw a plea). I agree with the majority that this statute does not apply to Allen's situation and K.S.A. 2019 Supp. 22-3210 did not provide authority for the court to allow Allen to withdraw his admissions made at his probation revocation hearing two weeks earlier. His only avenue of relief was a timely appeal of the original revocation or an action for ineffective assistance of counsel under K.S.A. 60-1507.

Although we agree on those points, the majority concludes that the district court had jurisdiction to consider Allen's motion. This is where I disagree. Our Supreme Court,

17

in *State v. Miller*, 260 Kan. 892, 902-04, 926 P.2d 652 (1996), *abrogated on other grounds by State v. Berreth,* 294 Kan. 98, 273 P.3d 752 (2012), has plainly stated that once the judge has *committed* the defendant to the Kansas Department of Corrections, the district court has no jurisdiction to modify the sentence or reconsider its revocation order. The district court remanded Allen to the custody of the Secretary of Corrections both orally at the revocation hearing on December 1, 2017, and by journal entry filed on December 15, 2017. *Miller* remains good law today. See *State v. Jamerson*, 309 Kan. 211, 220, 433 P.3d 698 (2019) (Johnson and Beier, JJ., concurring in part and dissenting in part); *State v. McGill*, 271 Kan. 150, 154, 22 P.3d 597 (2001); *State v. Terrell*, No. 114,678, 2016 WL 3597711, at *1 (Kan. App. 2016) (unpublished opinion); *State v. Brunk*, No. 101,889, 2010 WL 1379614, at *1-2 (Kan. App. 2010) (unpublished opinion). The Kansas Court of Appeals is duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Kansas Supreme Court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). I can find no such indication.

As a result, the only avenues for judicial review Allen had was a direct appeal of the revocation or a motion under K.S.A. 60-1507 for relief based on ineffective assistance of counsel. The district court lacked jurisdiction over his motion and therefore so do we. See *State v. Stough*, 273 Kan. 113, 116, 41 P.3d 281 (2002) (finding if the district court did not have jurisdiction, the appellate court does not acquire jurisdiction on appeal).

And tacking on a constitutional due process argument does not change the jurisdiction issue. Of course, defendants may raise constitutional issues, but there must be a procedural vehicle to do so. See *State v. Trotter*, 296 Kan. 898, 905, 295 P.3d 1039 (2013) (finding that although a litigant may raise subject matter jurisdiction at any time, there must be a procedural vehicle for presenting the issue to the court). K.S.A. 2019 Supp. 22-3210 was not that vehicle. So although I have no dispute with the thorough discussion of Allen's due process rights by the majority, I find it unnecessary given that

this is not the procedural vehicle to consider those claims. This court has been advised by the Supreme Court that once we determine the district court lacked jurisdiction, no further discussion is warranted. *In re Estate of Lentz*, 312 Kan. ___, 2020 WL 7294514, at *9 (Kan. 2020) ("When the Court of Appeals finds it lacks jurisdiction over a case, it must dismiss the appeal . . . [and] the better practice is not to proceed to opine about the merits of the issues.").

I would dismiss Allen's appeal for lack of jurisdiction.